UNITED STATES of America,
Plaintiff-Appellee,

v.

Ann (LNU) DECKER and Larry J. Vice,
Defendants-Appellants.

No. 75–4279.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1976.
Rehearing and Rehearing En Banc
Denied Jan. 10, 1977.

Anthony C. D'Antonio, New Orleans, La. (Court appointed), for Ann Decker.

Robert J. Stamps, New Orleans, La. (Court appointed), for Larry J. Vice.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD, District Judge.

ALLGOOD, District Judge:

This appeal follows jury verdicts adverse to appellants Decker and Vice on several counts of an indictment alleging possession with intent to distribute cocaine, or the aiding and abetting thereof, and conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. Both appellants were convicted of conspiracy. Vice was found guilty on Counts II through V charging possession with intent to distribute and distribution of cocaine; Decker was convicted on Counts VI through XI which related to other sales of cocaine. Appellants have raised several issues, only some of which merit comment in this opinion. Pertinent facts will be developed as necessary to dispose of these issues.

I. *Vicarious Liability for Substantive Offenses of Coconspirators*

In April and May of 1975, several persons were engaged in the distribution of cocaine from a supplier, one Herman or Roland Alonzo, to several consumers, some of which turned out to be Jefferson Parish, Louisiana, narcotics agents. Joseph Oddo testified that he received the cocaine from Alonzo on several occasions and that he supplied William Orgeron and Joey Danford with the drugs, who in turn sold them to the various agents. Decker and Vice were connected to the conspiracy through the testimony of Oddo and an accomplice, Violet Cheramie, and through extensive surveillance by narcotics agents. Though the evidence tying appellants to the particular sales alleged in the substantive counts of the indictment was negligible, both were convicted of several substantive violations of § 841 as well as conspiracy.

The Government relied principally on a theory of vicarious liability in its cases against Decker and Vice for the sales of the cocaine to the agents. The jury was charged in part as follows:

A party to a continuing conspiracy may be responsible for a substantive offense committed by a co-conspirator in furtherance of the conspiracy, even though that party does not participate in the substantive offense or have any knowledge of it.

The charge arises from *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), in which the Supreme Court, after finding that any overt act of a co-conspirator is attributable to all the members of the conspiracy in supplying that element of the offense where required, stated:

. . . we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others *for the purpose of holding them responsible for the substantive offense.* (Emphasis supplied.) 328 U.S. at 647, 66 S.Ct. at 1184.

Appellants here urged either that *Pinkerton* is unsound and should be overruled or that the theory of vicarious liability is inapplicable to the facts of this case.

While holding one vicariously liable for the criminal acts of another may raise obvious due process objections, see *Park v. Huff*, 506 F.2d 849, 864 [5th Cir. 1975], [Thornberry, J. dissenting]), it has received considerable support in this Circuit in the conspiracy context. In *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973), this court affirmed convictions on both the conspiracy and substantive counts in a marijuana smuggling case. In reaching this result, Judge Clark commented:

It cannot be gainsaid that the viable evidence in this case was skimpy. . . . [N]evertheless the evidence . . . was sufficient to support a guilty verdict in regard to Apollo's participation in the conspiracy. Since it was, and since a party to a conspiracy is liable as a principal for all offenses committed in furtherance of the conspiracy while he is a member [citations omitted] the jury was entitled to hold Apollo responsible for the substantive offenses charged in Count Two. 476 F.2d at 162.

In accord are: *Park v. Huff*, 506 F.2d 849 (5th Cir. 1975); *United States v. Falco*, 496 F.2d 1359 (5th Cir. 1974); *United States v. Martinez*, 466 F.2d 679 (5th Cir. 1972), cert. denied 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469; *Roberts v. United States*, 416 F.2d 1216 (5th Cir. 1969). The rule is followed in other circuits as well. See, e. g., *United States v. Wilner*, 523 F.2d 68 (2d Cir. 1975); *Poliafico v. United States*, 237 F.2d 97 (6th Cir. 1956); and *United States v. Montgomery*, 440 F.2d 694 (9th Cir. 1971), cert. denied 404 U.S. 884, 92 S.Ct. 221, 30 L.Ed.2d 166.

■■■ Given the validity and acceptance by this Circuit of vicarious liability in criminal conspiracies, we are faced with the question of whether it should be applicable to a narcotics distribution conspiracy, in effect making a conspirator liable for any remote sale of the drug passing through the conspiracy. While this result may at first seem harsh, liability is not unlimited. The Court in *Pinkerton* was careful to point out that a conspirator is accountable only for the acts of others in furtherance of the conspiracy, i. e., those acts which were within the scope of or were a reasonably foreseeable consequence of the unlawful agreement. 328 U.S. at 647, 66 S.Ct. 1180. In this respect it is helpful to consider the inherent nature of most narcotics conspiracies, as did the Second Circuit in *United States v. Agueci*, 310 F.2d 817 (2d Cir. 1962):

> The "chain" conspiracy has as its ultimate purpose the placing of the forbidden commodity into the hands of the ultimate purchaser. . . . That form of conspiracy is dictated by a division of labor at the various functional levels—exportation of the drug from Europe and importation into the United States, adulteration and packaging, distribution to reliable sellers, and ultimately the sale to the narcotics user. 310 F.2d at 826.

It appears then that the theory of vicarious liability is particularly applicable in narcotics distribution conspiracies and we find no reason for not so holding in the instant case.

II. *Refusal to Admit Juvenile Adjudication for Impeachment*

William Orgeron was called by the Government and testified that he had in fact sold drugs which he had received from Joseph Oddo to the Jefferson Parish agents. He in no way implicated appellants and his testimony as to the existence of the conspiracy was thoroughly corroborated by surveillance and the testimony of Oddo. Nevertheless, appellants urge that the trial court's refusal to allow them to cross examine Orgeron as to an adjudication of juvenile delinquency denied them the right of confrontation and requires reversal of this case.

■■■ It is not clear from the record before us whether the trial court found the evidence inadmissible under Rule 609(b) of the Federal Rules of Evidence, pertaining to the remoteness of convictions used for impeachment, or 609(d) which generally precludes use of juvenile adjudications for such purpose. Nor are any of the facts relating to the adjudication known to this court. In any case, admission of such evidence requires the court to find either that its "probative value . . . substantially outweighs its prejudicial effect" (609[b]) or that its admission is "necessary for a fair determination of the issue of guilt or innocence." (609[d]). Appellants proffered no evidence concerning the adjudication and therefore cannot complain of the trial court's failure to admit the evidence based on such specific findings. See *United States v. Alvarado*, 519 F.2d 1133 (5th Cir. 1975).

Appellants further contend that the denial of cross-examination of Orgeron as to his juvenile delinquency adjudication is violative of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). *Davis*, however, is readily distinguishable in that, in that case, the witness was, at the time of trial, on probation for burglary and the defense was attempting to establish possible bias through introduction of the adjudication. The Court also noted the importance of the witness' testimony to the State's case and found that, in that limited setting, allowance of cross examination was paramount to the general policy against impeachment through juvenile adjudications. Since neither of those considerations are present in the instant case, we find that the trial court did not abuse its discretion in refusing to allow appellants to pursue the matter further. See *United States v. Beasley*, 519 F.2d 233 (5th Cir. 1975); *Snyder v. Coiner*, 510 F.2d 224 (4th Cir. 1975); *Cotton v. United States*, 355 F.2d 480 (10th Cir. 1966); *Luck v. United States*, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965); and *Thomas v. United States*, 74 U.S.App.D.C. 167, 121 F.2d 905 (1941).

## III. *Failure of the Prosecution to Correct False Testimony*

Joseph Oddo testified that his attorney was not present during the negotiations with the Government which resulted in Oddo's decision to testify. He also stated that he had consulted with his attorney concerning this decision but that his attorney had asked to be excused after he had decided to testify. Violet Cheramie testified that she had no knowledge of Oddo's agreement with the Government at the time she decided to testify. After this testimony, but prior to the close of the case, the Assistant United States Attorney advised defense counsel in a letter that it was his recollection that Oddo's attorney was present during the negotiations, but had excused himself before Oddo gave his statement. Cheramie's testimony was also incorrect in that she and Oddo had discussed his decision to testify prior to reaching her decision.

Relying on *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), appellants question whether the disclosure of the incorrect testimony to the defense after the witness was off the stand but while still subject to recall comported with due process. While we cannot say that, had the testimony of these two witnesses been entirely impeached, the verdict may not have been affected, *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Fannon*, 491 F.2d 129 (5th Cir. 1974), cert. denied 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286, we hold that the Government fulfilled its duty of disclosure by supplying appellants with its recollection of the true circumstances of the negotiations with the witnesses at a time when recall and further exploration of these matters was still possible. *United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976); *United States v. Natale*, 526 F.2d 1160, 1170–71 (2d Cir. 1975), cert. denied 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193. Moreover, in view of the fact that Oddo's agreement was fully disclosed to the jury and the subject of extensive cross-examination, any error would in our opinion be harmless. See *United States v. Prout*, 526 F.2d 380 (5th Cir. 1976); *United States v. Hildebrand*, 506 F.2d 406 (5th Cir. 1975), cert. denied 421 U.S. 968, 95 S.Ct. 1961, 44 L.Ed.2d 457.

We have examined the other contentions of the appellants and find them all to be without merit. Accordingly, we affirm these convictions on all counts.