UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Samuel SCRUGGS,
Defendant-Appellant.

No. 77–5537.

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1978.

Rehearing and Rehearing En Banc
Denied Jan. 4, 1978.

Coleman, Circuit Judge, filed a concurring opinion.

Robert G. Krohn, Corinth, Miss. (Court-appointed), for defendant-appellant.

H. M. Ray, U. S. Atty., Thomas W. Dawson, Alfred E. Moreton, Asst. U. S. Attys., Oxford, Miss., for plaintiff-appellee.

Before COLEMAN, GEE and HILL, Circuit Judges:

GEE, Circuit Judge:

Appellant Robert Samuel "Tackhammer" Scruggs was indicted, along with five others, on one count of conspiracy to transport altered money orders in interstate commerce, in violation of 18 U.S.C. § 371. Twelve substantive counts charged him with causing these altered money orders to be transported in interstate commerce and aiding and abetting others to commit this offense, in violation of 18 U.S.C. §§ 2 and 2314. A jury trial resulted in conviction of Scruggs[1] and two of his co-defendants. In this appeal, appellant seeks a reversal on three grounds. First, he contends that the trial court erred, considering all the circumstances of the case, in giving an *Allen* charge. Second, he contends that there was no evidence to support his convictions on seven substantive counts. Finally, he contends that reversible error was committed by the admission of certain evidence. We disagree with all three contentions and affirm his convictions.

This case involved the operation of a money order scheme in Northern Mississippi, Tennessee and Alabama in late 1976 and early 1977. The plan consisted of purchasing Travelers Express Company money orders in small amounts, altering these amounts to more substantial sums, and then cashing the altered money orders at various banks and businesses throughout the area. Twenty-five money orders were purchased from Mr. Quik Store No. 23 in Booneville, Mississippi, for amounts ranging from $.50 to $2.00. The same money orders were subsequently altered, cashed and ultimately presented for payment in amounts ranging from $46.00 to $193.00. Because the orders were all payable through The First Northwestern National Bank in Faribault, Minnesota, the bank collection process resulted in the money orders' traveling in interstate commerce. Appellant Scruggs was the apparent leader of this operation, procuring the money orders from "a friend," participating in their alteration with a check-writing machine and receiving and distributing the proceeds from the cashed instruments.

Appellant's primary complaint on appeal concerns the trial court's use of the much-maligned *Allen*,[2] or "dynamite," charge after the jury had begun its deliberations. The jury had received the case at approximately 5:45 p. m. on a stormy Friday evening after a five-day trial. At approximately 10 p. m., the trial judge and counsel met in chambers to discuss the alternative possibilities of a recess until Saturday morning or a supplemental charge and further deliberations. Appellant's lawyer asked the court to allow the jury to continue deliberations for another 30 minutes or an hour so that they might reach a verdict on their own. At 10:28 p. m. the judge sua sponte called the jury back in and delivered what he characterized as a mild *Allen* charge.[3] At 10:38 p. m. the jury was asked

---

1. Scruggs was convicted on all 13 counts.

2. So called because it was first approved by the Supreme Court in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

3. The judge gave the following supplemental instructions:

 Members of the Jury, you have had this case in deliberation for approximately four and a half hours. You must not disclose how you stand, but I take it that so far you have been unable to arrive at a verdict. Is that correct? Don't tell me how you stand.

 At this time I want to give you certain additional instructions, really, to a certain extent by way of repetition to what you have been told already, but you do have the right to return a partial verdict at any time. That is to say, if all 12 of you are able to agree on a verdict with respect to any defendant, as to any count, you have the right to return a partial verdict, in which event you will be returned to the jury room to consider your deliberations. That was one thing that I had overlooked. You have that latitude. You are not required to do that, but you have the right to bring in a partial verdict.

to resume its deliberations. The verdict was returned at 11:26 p. m. Two of the five co-defendants were acquitted; appellant Scruggs and two others were convicted.

Appellant objected to this charge at trial on the basis of its timing but not its content. On appeal, he urges that the trial court committed reversible error in giving this charge. He repeats his trial grounds for objection and adds a general attack on the *Allen* charge as being inherently coercive.

■ At the outset we note that the content of the charge at issue cannot seriously be questioned. It is well settled in this circuit that the *Allen* charge is permissible,[4] within the limitations of our prior decisions. *United States v. Bailey,* 480 F.2d 518 (5th Cir. 1973) (en banc). We have upheld versions of this charge so long as they avoid "the pitfalls of coercive deadlines, threats of marathon deliberations, or pressure for surrender of conscientiously held minority views." *United States v. Skinner,* 535 F.2d 325, 326 (5th Cir. 1976),

> I want to say this to you: You have been patient in listening to the testimony in this case. It is an important case. I realize that it is a case that is not without its complications, in that there are a number of counts involved, and there are five different defendants. Obviously, any conscientious juror is going to require time to study the case with a view of reaching a proper and just verdict. I just want to point out a few things to you, however. This trial has not only consumed all of this week, taking our time, but it has been expensive to both sides. Now if you should fail to agree as to the verdicts in this case, the case is left open and undecided, and like all cases, this case must be disposed of at some time. There appears to be no reason to believe that the case can be tried again by either side any better, or more exhaustively than it has been tried before you. Any future jury must be selected in the same manner and from the same sources as you have been chosen. There appears to be no reason to believe that the case could be later submitted to 12 men and women more conscientious, more impartial, more competent to decide the issues in this case than you, or that more or clearer evidence could be produced on behalf of either side. Now I mention these things to you because in the long charge I gave, this point may have escaped your attention. I am sure you have been, up to this time, fully occupied in reviewing the evidence in the case. As I told you in the instructions, at the time the case was submitted to you for decision, that no one of you should surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of other members of the jury, or merely for the purpose of acquiescing or returning a verdict in which you do not conscientiously believe. Nevertheless, it is your duty as jurors to consult with one another and to deliberate further, with a view of reaching an agreement, if you can do this without doing violence to your individual judgment. Each one of you, as I have said before, must decide this case for yourself. It is your individual responsibility, as well as

> your collective responsibility. However, you should do so only after you have carefully considered, again, the evidence in the case with your fellow jurors. In order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor and frankness, and with proper deference to and regard for the opinions of each other. That is to say, in conferring together, each of you should pay due attention and respect to the views of the others, and listen to each other's arguments with the disposition to reexamine your own view. I remind you that you are not partisans. You were not selected to take sides. You are the judges of the facts, and you have but one interest. I remind you, as I told you before, that that interest is to seek the truth from the evidence in this case. You are as I have said before, the exclusive judges of the weight and effect of all of the evidence.
>
> Now in the performance of this high duty, you are at liberty to disregard all of the comments of both the court and counsel, including, of course, the comments that I am now making.
>
> After full deliberation and consideration of all of the evidence, it is your duty, if you can do so, to reach a verdict in this case provided it doesn't trespass upon your conscience' and your honest judgment. In order to be a valid judgment, in order to be a valid verdict, the verdict, whatever it may be, must represent the honest and conscience (*sic*) judgment of each member of the jury.
>
> I know the hour is late, but I am, in the light of these instructions, asking· that you go back, resume your deliberations at this time. Mr. Marshal, lead the jury back into the jury room to continue their deliberations.

4. Our approval of the use of the charge has not been unanimous, however. *See, e. g., United States v. Bailey,* 480 F.2d 518, 519–22 (5th Cir. 1973) (en banc) (Goldberg, J., concurring in part and dissenting in part); *Thaggard v. United States,* 354 F.2d 735, 739–41 (5th Cir. 1965) (Coleman, J., specially concurring).

*cert. denied,* 429 U.S. 1048, 97 S.Ct. 756, 50 L.Ed.2d 762 (1977). We require trial judges, when giving any version of *Allen,* to make it clear to each juror that he must conscientiously adhere to his or her own honest opinion, and the judge must avoid creating the impression that a juror-caused mistrial is "improper, questionable, or contrary to good conscience." *Thaggard v. United States,* 354 F.2d 735, 739 (5th Cir. 1965). The charge given below was well within these limitations.[5]

Appellant's main attack, however, is not on the content of the charge. He contends that the totality of the circumstances conclusively show that the charge was coercive: the charge was given at 10:28 p. m. after only four and one-half hours of deliberation, no request was made by counsel or by the jury for additional instructions, there was no indication of deadlock, and the verdict was returned only 48 minutes after the charge was given.

■ We previously have recognized that whether an *Allen* charge will be given, or when it will be given, is within the sound discretion of the trial judge. *United States v. Bass,* 490 F.2d 846, 855 (5th Cir. 1974); *Hale v. United States,* 435 F.2d 737, 742 (5th Cir. 1970), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). We have never required the trial judge to wait for requests from counsel or from the jury before giving the charge. *See United States v. Bass, supra; Hale v. United States, supra; Thaggard v. United States, supra.* While we think it preferable that juries not be kept late in the evening, we must conclude, as we did in *Bailey,* that the timing complained of does not allow us to find that

the jury was coerced. We have approved an *Allen* charge that was given after only 65 minutes of deliberation and that was followed by a verdict 25 minutes later. *Andrews v. United States,* 309 F.2d 127, 129 (5th Cir. 1962). *See also United States v. Bailey,* 468 F.2d 652, 664–65 (5th Cir. 1972), *aff'd en banc,* 480 F.2d 518 (5th Cir. 1973). Despite the dictum in *United States v. Williams,* 447 F.2d 894 (5th Cir. 1971), and *Webb v. United States,* 398 F.2d 727 (5th Cir. 1968), relied on by appellant, we find no abuse of discretion here.

Appellant next contends that the trial court committed reversible error by admitting certain evidence that the government failed to produce for discovery as required by Rule 16 of the Federal Rules of Criminal Procedure.[6] Counsel was informed of the existence of all 25 of the money orders listed in the indictment, but only twelve were immediately produced. The remaining thirteen were not delivered until the morning of trial. Counsel had approximately two hours before trial to review these documents. Appellant also complains of the admission of photographic enlargements of some of the money orders as exhibits for a government expert's testimony concerning their alteration. These enlargements were not provided to appellant prior to their admission, but he was furnished the expert's lab report that included a finding concerning the alteration of the money orders. A twenty-minute recess was granted, at the request of appellant, so that he could inspect the enlargements prior to cross-examination of the expert.

\* \* \* \* \* \*

(C) *Documents and Tangible Objects.* Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

---

5. For an example of a charge that went beyond the bounds of propriety, see *Green v. United States,* 309 F.2d 852, 854 (5th Cir. 1962). The panel there recognized that the outermost limit of permissible use is to tell jurors to "listen, with the disposition to be convinced, to each others' argument." The charge at issue here is within this admonition as well.

6. Fed.R.Crim.P. 16 controls discovery and inspection. It provides in pertinent part:

(a) *Disclosure of Evidence by the Government.*

(1) *Information Subject to Disclosure.*

 It cannot be disputed that the money orders at issue are Rule 16 evidence and that the government had a duty to produce them for inspection upon proper request by the appellant. Nor is the government excused from its obligation by the fact that the documents were in the possession of the FBI prior to trial. *United States v. James,* 495 F.2d 434, 436 (5th Cir.), *cert. denied,* 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974); *United States v. Deutsch,* 475 F.2d 55, 57 (5th Cir. 1973). However, our cases consistently have required a showing of prejudice to the substantial rights of the defendant before reversing because of an error in administering the discovery rules. *United States v. James, supra; United States v. Bockius,* 564 F.2d 1193 (5th Cir. 1973); *United States v. Saitta,* 443 F.2d 830 (5th Cir.), *cert. denied,* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971). Even if we assume *arguendo* that Rule 16 was violated in the instant case, appellant has failed to show sufficient prejudice to require us to reverse. He does not claim prejudice from his having only two hours prior to trial to inspect the thirteen money orders. He does argue on appeal that nonproduction of the photographic enlargements hindered his ability to attack the alleged use of two checkwriting machines on the instruments; he claims that the alteration could not be detected on the original money orders by the naked eye. We find any prejudice to appellant insubstantial. Counsel asked for and received a recess to prepare for cross-examination of the government's expert concerning his finding of alteration. More significantly, counsel did not ask for a longer recess or for a continuance so that he might more effectively meet this evidence. *See United States v. James, supra; United States v. Bockius, supra. See also United States v. Bailey,* 550 F.2d 1099, 1101 (8th Cir. 1977). Neither can appellant claim surprise; he was told prior to trial that the expert had found that two machines were used on the money orders. Thus, absent the required showing of prejudice, we decline to reverse.

 Appellant's sufficiency of the evidence complaint need not detain us. He was convicted of conspiracy and does not attack that conviction on appeal. He contends that there is no evidence to support his convictions on seven counts of aiding and abetting and causing the money orders to be transported in interstate commerce. However, a party to a continuing conspiracy may be responsible for substantive offenses of co-conspirators if the acts were committed in furtherance of the conspiracy. This vicarious liability attaches even if the defendant neither participated in the act nor knew of it. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Decker,* 543 F.2d 1102 (5th Cir. 1976), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390 (1977). Viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), ample evidence was introduced below that co-conspirators Thompson and Stovall participated in altering and passing the money orders. These substantive acts occurred during, and in furtherance of, the conspiracy of which appellant Scruggs was a member. Thus, under the principle of *Pinkerton,* Scruggs is liable for these acts.

The judgment of the district court is AFFIRMED.

COLEMAN, Circuit Judge, concurring.

Judge Gee has correctly stated the law of this Circuit with reference to the *Allen* charge. I therefore concur in the opinion which he has authored for the Court.

At the risk, however, of being accused of an attempt to fight lost battles all over again, I must, in good conscience, again state my long-held opposition to the use of the *Allen* charge, as referred to by Judge Gee in Footnote 4.

It was my professional privilege, in days now long gone, to prosecute or defend in literally hundreds of criminal trials, both state and federal. I also served four years as a state trial judge in a court of general jurisdiction, civil and criminal. That experience taught me that the *Allen* charge in all its forms is inherently coercive and, with

deference, I have not the slightest doubt that it infringes on the right of a defendant to the unhampered product of the constitutionally guaranteed jury system once a jury has retired to consider its verdict.

Although I have not the slightest doubt, from the record, that these appellants were flagrantly guilty and should have been convicted, I am troubled about the trial procedure when the verdict came 34 minutes before midnight, on a noteworthily stormy night, and then only after the receipt of an admonition from the trial judge, given sua sponte at the late hour of 10:30 P.M.

There were six defendants and a thirteen count indictment. The trial had lasted five days. Including time for dinner, the jury had been out less than five hours when it got the *Allen* charge. When it got the charge it was not sent home and told to return the next day to continue its deliberations. It was returned to its room and kept there until it did return a verdict shortly before midnight.

Of course, this was not the extensive detention suffered by a jury in Attala County, Mississippi, who, in 1913, was trying a man for shooting the sheriff of the adjoining County of Choctaw. That jury retired at noon of a Saturday to consider its verdict. Under state law it could not be allowed to separate under any circumstances. The trial judge held the jury until the following Saturday, when it was finally discharged for inability to agree on a verdict.

My whole point is that once a jury is handed the case the role of the judge has come to an end unless the jury sees fit to ask for further enlightenment as to the law. The *Allen* charge does not concern itself with the law; it is a direct appeal for a verdict, emanating from "the boss of the court". My opposition to its use stands unabated. If, however, it is going to be used (as the law now permits) it ought not to be given after five o'clock on any court day.

Nothing I have said is to be construed as a criticism of the trial judge. He acted well within the law as it presently stands in this Circuit.