**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Leonard PARRISH and Ralph W.**
**Smith, Sr., Defendants-Appellants.**

No. 83–3563.

United States Court of Appeals,
Fifth Circuit.

June 27, 1984.

Walter J. Rothschild, Federal Public Defender, New Orleans, La., for Parrish.

George O'Dowd, Asst. Federal Public Defender, New Orleans, La., for Smith.

John Volz, U.S. Atty., Warren Montgomery, Harry W. McSherry, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before WISDOM, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Ralph Wesley Smith, Sr., and James Leonard Parrish appeal from their convictions for possession with intent to distribute methamphetamine, distribution, and conspiracy. We affirm; there was no prejudicial error.

I. *Facts*

Ralph W. Smith, Sr. (Smith), Wallace William Wade (Wade), and two others (Smith, Jr. and Mora) sold methamphetamine to federal agents in Kenner, Louisiana, on March 10, 1983. They were arrested and indicted. Wade plea-bargained and agreed to testify against the others. A superseding indictment, returned on April 15, 1983, charged Smith, James Leonard Parrish (Parrish), Smith, Jr., and Mora on three counts. Count I alleged a conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982). Count II alleged that on February 11, 1983, the defendants had possessed methamphetamine with intent to distribute it; Count III alleged that on March 15 the defendants distributed methamphetamine. Both Counts II and III alleged violations of 21 U.S.C. § 841(a)(1) (1982), proscribing the substantive acts of possessing and distributing a controlled substance, and 18 U.S.C. § 2 (1982), providing that one who aids or

abets in the commission of an offense is punishable as a principal.

Smith, Parrish, and Smith, Jr. were tried jointly. Smith and Smith, Jr. testified; Parrish did not. Smith and Parrish were convicted on all three counts.[1]

## II. *Smith*

Smith's defense at trial was entrapment: he contended that he was coerced into participating in the drug deal by Len Ridley, an acquaintance of Smith's who was acting as a confidential informant for the government. Ridley was not called as a witness by any party. Smith suggests that Ridley's failure to testify contributed to the alleged unfairness of his trial, but since Smith had the opportunity to call Ridley and chose not to do so he cannot complain of that failure now.

### A. *Prior Conviction*

Smith's first assignment of error arises out of the prosecution's use at trial of his prior conviction for conspiracy to manufacture phenyl acetone, a precursor of methamphetamine. Before trial, the government indicated that it would not introduce evidence of Smith's involvement in this previous conspiracy in its case in chief, although that evidence might have been admissible under Rule 404(b) of the Federal Rules of Evidence.[2] Wade was the government's principal witness. On direct examination the prosecutor asked Wade how he knew that Smith had been in the drug business. Wade replied that Smith "told me that was what he was in prison for before". The defense attorneys objected immediately. After the prosecutor stated that Wade's response was unanticipated, the trial judge overruled the objection and told the jury to disregard the "reference to Mr. Ralph Smith Senior's background". When Smith testified, however, the fact of his previous conviction became admissible

for purposes of impeachment. Wade's testimony therefore had no prejudicial effect. *See United States v. Smith,* 5 Cir.1979, 605 F.2d 839, 845.

On direct examination Smith stated that he had been in prison and on cross-examination he admitted that the conviction had been for conspiracy to manufacture phenyl acetone. In closing argument, the prosecutor (Mr. Weiss) addressed Smith's conviction, his credibility, and his entrapment defense in the following terms:

Now, Smith, Sr., would have you believe that Ridley, the confidential informant in this case, caused him to do something that he otherwise would not have done, that is, possess and distribute methamphetamine. He wants you to believe, notwithstanding the fact that he has already admitted under cross-examination that he was convicted of conspiracy to possess phenol acetone which is the active ingredient for speed, methamphetamine, the very drug that is the subject of the present indictment.

BY THE COURT:

One more minute Mr. Weiss.

BY MR. WEISS:

Ladies and gentlemen, Smith Sr., had every predisposition to engage in this kind of activity. He accepted Wade into his home. He sent Wade and Smith Jr. to Vidalia to meet Parrish. He sent Wade to San Antonio to meet Mora. He flew to San Antonio to meet Mora. He sent Wade to Miami to pick up dope. He sent Wade to Vidalia to take the dope to Parrish. He went to the motel room, accompanied the agents in the presence of agent Johnstone and counted out the 22,000.00 and he received, he was there when Page gave the signal to Johnstone that he had received the narcotics and Johnstone effected the arrest on Smith Jr. That definitely does not sound like

---

1. Smith, Jr., was convicted on Counts I and II; he does not appeal.

2. "(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

someone who is not predisposed to committing the offenses charged in the indictment.

Smith moved for a mistrial, which was denied.

■■■ Smith does not contest that his conviction was relevant for purposes of impeachment, and that the prosecutor could properly ask the jury to consider that conviction in connection with Smith's credibility. Fed.R.Evid. 609. Read literally, the prosecutor's remarks did no more than this. Smith contends, however, that these remarks were carefully arranged so that the jury would draw the inference that Smith was predisposed to commit the crimes charged because he had committed a similar crime in the past. Ordinarily such an argument by a prosecutor is improper. Fed.R.Evid. 404(b). In this case, however, Smith put his predisposition in issue by alleging entrapment. It was proper for the prosecution to rebut Smith's entrapment defense by eliciting evidence of his prior conviction for a similar crime. *United States v. Jones*, 5 Cir.1973, 473 F.2d 293, 294, *cert. denied*, 1973, 411 U.S. 984, 93 S.Ct. 2280, 36 L.Ed.2d 961; 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[04] (1982). The evidence is admissible if it is relevant to show that the defendant was predisposed to commit the crime charged, and if its probative value outweighs its potential for undue prejudice. *United States v. Punch*, 5 Cir.1983, 722 F.2d 146, 153; *United States v. Beechum*, 5 Cir.1978, 582 F.2d 898, 911–12 (en banc), *cert. denied*, 1979, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472. Here the evidence was clearly relevant to the question of predisposition, a question that had been put in issue by the defendant. The probative value was not outweighed by the prejudicial potential of the evidence or the prosecutor's oblique reference to that evidence in closing argument. The previous conviction was for a crime very similar to that for which Smith was on trial, and was there-

fore strongly relevant to the issue of predisposition; it was not evidence of a heinous crime that might incite the jury; and the previous crime was not described in such detail that the jury might try Smith for the previous crime as well as the present. *See United States v. Salisbury*, 11 Cir.1981, 662 F.2d 738, 741, *cert. denied*, 1982, 457 U.S. 1107, 102 S.Ct. 2907, 73 L.Ed.2d 1316. Accordingly, Smith's prior conviction was admissible not only to impeach his credibility but to rebut his entrapment defense as well, and the prosecutor's closing argument was therefore not improper even if it is interpreted as Smith suggests.

**B.** *Jury Instruction*

Smith also asks for a new trial because the trial judge refused his request for a supplemental jury instruction on entrapment. The trial judge used the 1983 Pattern Jury Instructions on entrapment approved by the Fifth Circuit District Judges Association,[3] but denied Smith's request for an additional instruction that

> "where the government used an informer to induce the commission of a crime they cannot thereafter disown such informer and insist that it was not responsible for the actions in order to avoid the defense of entrapment."

Smith argues that this instruction was essential because the informer, Len Ridley, did not testify.

■■■ Refusal to deliver a requested instruction is reversible error only if the instruction is substantively correct, is not covered by the charge actually delivered to the jury, and concerns an important point in the trial so that the failure to give it substantially impairs the defendant's defense. *United States v. Milstead*, 5 Cir. 1982, 671 F.2d 950, 952 (per curiam); *United States v. Grissom*, 5 Cir.1981, 645 F.2d 461, 464. In his closing argument, Smith's attorney was permitted to argue that the government was responsible for the acts of

---

**3.** This instruction is similar in form to the one we approved in *United States v. Smith*, 5 Cir. 1979, 588 F.2d 111, 116–17.

its confidential agent. The government did not contest its responsibility for Ridley's acts, and the Pattern Jury Instruction states that a government agent's acts may lead to entrapment. Because "the actual charge, taken as a whole, ... correctly reflect[ed] the issues and the law of the case", there was no reversible error. *United States v. Smith*, 5 Cir.1984, 726 F.2d 183, 186 (per curiam).

### III. *Parrish*

#### A. *Sufficiency of the Evidence*

Parrish lived in Georgia, and he was not present when the other defendants were arrested in Louisiana on March 15, 1983. There was, however, testimony implicating Parrish in the conspiracy. A law enforcement officer testified that Smith had told the officer that Parrish was a "cooker", or manufacturer, of the drugs. Wade testified that he made two trips to Georgia and saw Parrish both times. Wade testified that on the first trip, in February, he received a package from Parrish and brought it to New Orleans; the package later turned out to contain drugs. On the second trip, in early March, Wade brought a package of drugs from Florida and met Smith and Parrish in Georgia. Smith and Parrish went into another room with the drugs and a scale, and then gave Wade the package and told him to deliver it to Mora in San Antonio. Drugs were later transported from San Antonio to New Orleans, and were included in the drugs sold to federal agents on March 15, 1983. Smith denied that Parrish had any involvement in the drug transactions, and denied having been present in Georgia in March as Wade testified. Smith also denied that he told anyone that Parrish was a cooker, but he admitted that he knew Parrish and had done business with him.

Parrish challenges the sufficiency of the evidence. "It cannot be gainsaid that the viable evidence in this case was skimpy." *United States v. Apollo*, 5 Cir. 1973, 476 F.2d 156, 162. Nevertheless it was sufficient. Parrish's involvement in the conspiracy was established by Smith's statement that Parrish was a cooker;[4] by Wade's testimony that Parrish gave him a package of drugs to take to Smith in Louisiana; and by Wade's testimony that he saw Smith and Parrish together with drugs and a scale. This evidence establishes not "mere presence", as Parrish argues, but knowledge of, and active involvement in, a conspiracy to distribute drugs. "[P]roof of the defendant's knowledge of all the details of the drug conspiracy is not required, as long as knowledge of the essential details is established, and the defendant need neither have been present at the inception of the conspiracy, nor have played a major role therein." *United States v. Aguirre Aguirre*, 5 Cir.1983, 716 F.2d 293, 297. Once the conspiracy was established, Parrish could be found liable for all offenses committed in furtherance of the conspiracy while he was a member, as long as the offenses were in the scope of or were a foreseeable consequence of the conspiracy. *Pinkerton v. United States*, 1946, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489; *United States v. Rosado-Fernandez*, 5 Cir.1980, 614 F.2d 50, 53; *United States v. Decker*, 5 Cir.1976, 543 F.2d 1102, 1103–04, *cert. denied*, 1977, 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390; *Apollo*, 476 F.2d at 162. A jury could reasonably find that Parrish was therefore guilty of the substantive offenses.[5] *Decker*, 543 F.2d at 1103. Moreover, there was sufficient evidence to con-

---

**4.** This statement, made by Smith to a law enforcement officer, was admissible against Parrish as a statement by a co-conspirator. Fed.R. Evid. 801(d)(2)(E).

**5.** Although Count I charged conspiracy to possess with intent to distribute, and not conspiracy to distribute, it is clear that the distribution charged in Count III, as well as the possession charged in Count II, was "a reasonably foreseea-

ble consequence of the unlawful agreement". *Decker*, 543 F.2d at 1104. Obviously, when the defendants agreed to possess methamphetamine with intent to distribute it, they foresaw actual distribution. That Parrish might not have known that the drugs would be sold in Kenner on March 10 does not relieve him from liability for the foreseeable marketing efforts of his co-conspirators.

vict Parrish, as an aider and abetter, under 18 U.S.C. § 2. The jury could find Parrish liable under this theory as well.[6] Viewing the evidence in the light most favorable to government, as we are required to do, we conclude that "a reasonable trier of fact could find that the evidence establishe[d] guilt beyond a reasonable doubt". *Aguirre Aguirre*, 716 F.2d at 297.

### B. *Venue*

On appeal Parrish also argues that venue was improper. Parrish did not raise this objection at trial, except insofar as he challenged the sufficiency of the evidence on the ground that no evidence placed him in Louisiana during the commission of conspiracy. His objection is untimely. Parrish asserts that he could not object to venue until he knew that the government's evidence did not place him in Louisiana. But Parrish could have objected after the government presented its case. "The purpose of a venue motion is to protect defendants from the inconvenience of defending charges in a distant place having no connection with the offense.... Thus, the courts have consistently ruled that a claim of venue must be raised at least prior to a verdict." *United States v. Cordero*, 1 Cir. 1981, 668 F.2d 32, 44.

▇▇▇ In any event, venue was proper. A member of a conspiracy may be tried in any district where the conspiracy was formed or an overt act took place, even if the individual defendant has "never set foot" in the district. *United States v. Winship*, 5 Cir.1984, 724 F.2d 1116, 1125. Similarly, an aider and abettor "may be tried in the district where the principal committed the substantive crimes". *Id.* Venue need be shown by only a preponderance of the evidence, not beyond a reasonable doubt. *Id.* at 1124. Since we have found sufficient evidence to sustain Parrish's convictions as a co-conspirator or as an aider and abettor, his venue objection must fail as well.

**6.** The trial court instructed the jury on both co-conspirator liability and aiding and abetting. The jury could therefore convict under either

### C. *Severance*

Finally, Parrish argues that he should have been granted a severance. Parrish did not testify, presumably so that his prior criminal record would not be admissible. Nevertheless, Smith twice mentioned that he had been in prison with Parrish. During direct examination, Smith's attorney asked Smith to "tell the whole story" of the drug transaction that resulted in his arrest on March 15. Smith responded with a lengthy answer. The first sentence of that answer was, "Mr. Rigley [sic] and I were in prison together at Eglin Air Force Base along with Mr. Parrish." Smith then went on to describe his dealings with Ridley and did not mention Parrish again. Parrish's attorney did not object immediately, nor did he ask for curative instructions. At the end of the direct examination, however, he approached the bench and moved for a severance on the ground that Parrish would be prejudiced because the other defendants would testify while Parrish would not. The prosecutor objected to severance, and in doing so noted that the real problem was Smith's testimony regarding Parrish's imprisonment. The court denied the severance. The prosecutor then cross-examined Smith in detail. He questioned Smith about his association with the other co-conspirators. In the course of this questioning, he asked:

Q. How long have you known Mr. Parrish?

A. I met James Parrish about two years ago, I guess.

Q. How did you meet him?

A. I met him in prison.

Q. Where does Mr. Parrish live?

A. He lives in Vidalia, Georgia.

Q. After you got out of prison what relationship did you have with Mr. Parrish?

A. Good friends.

theory. *See United States v. Wilson*, 5 Cir.1981, 657 F.2d 755, 762–63.

At the end of cross-examination, Parrish's attorney again approached the bench and renewed the severance motion because the prosecutor had elicited more testimony about Parrish's imprisonment. The court denied the motion without discussion.

This is not a case of antagonistic defenses, in which the jury could not believe one defendant without disbelieving the other. Smith and Smith, Jr. both denied that Parrish had any involvement in any drug dealings; their defenses did not implicate Parrish. *See United States v. Morrow,* 5 Cir. 1976, 537 F.2d 120, 138, *cert. denied,* 1977, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806. We therefore have no occasion to consider the appropriate standards for evaluating an assertion that defenses are exclusive or antagonistic. *See United States v. Romanello,* 5 Cir.1984, 726 F.2d 173. The problem in this case is rather that evidence admissible against Smith is inadmissible against Parrish.

■■■ To secure relief Parrish must demonstrate specific and compelling prejudice warranting a finding that the trial court abused its discretion by denying severance. *United States v. Sheikh,* 5 Cir. 1981, 654 F.2d 1057, 1064, *cert. denied,* 1982, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852; *United States v. Ocanas,* 5 Cir.1980, 628 F.2d 353, 358, *cert. denied,* 1981, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840. We have stated that when evidence is admitted against only one co-defendant, severance is required only if the jury cannot be expected to follow the court's instructions to consider the evidence against only the appropriate defendant. *United States v. Salomon,* 5 Cir. 1980, 609 F.2d 1172, 1175–76. In the present case no such instructions were requested or given until the jury charge; at that time, the court instructed the jury not to consider Parrish's conviction. The prosecution suggests that Parrish has waived his right to object to joint trial because he did not object immediately to Smith's testimony or immediately request curative instructions. We disagree: it was reasonable for Parrish's attorney to wait for an opportunity to approach the bench and object out of earshot of the jury. Similarly, the attorney could reasonably conclude that a curative instruction would do more harm than good, by calling attention to Smith's comment. Parrish made his objections and his desired relief known in a timely fashion; and he has not waived his right to appeal the issue. Of course, he cannot and does not now object that the court should have given a curative instruction during Smith's testimony. We would grant him a new trial only if he could meet the "heavy burden" of showing compelling prejudice, against which the trial court could not have afforded protection. *Salomon,* 609 F.2d at 1175 & n. 4; *see also United States v. Swanson,* 5 Cir.1978, 572 F.2d 523, 528–29, *cert. denied,* 1978, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152.

■■■ Parrish has not met his burden. We conclude that Smith's references to Parrish's imprisonment were harmless in the context of the trial. Smith's first comment was made off-handedly, at the beginning of a lengthy monologue describing complicated dealings between Smith and Ridley. The second reference, elicited by the prosecutor, is somewhat more troubling. The prosecutor could have been more careful, since he knew that Parrish objected to any mention of his prison time. But there is nothing to suggest that the prosecutor intended to elicit mention of Parrish's imprisonment. When the prosecutor asked how Smith met Parrish, he had no way to know that Smith met Parrish in prison, and not before. After Smith's answer, the prosecutor did not dwell on Parrish's imprisonment or attempt to "nail it down with another question and answer", as did the prosecutor in *United States v. Warf,* 5 Cir.1976, 529 F.2d 1170, 1171. Instead, he immediately moved on to questions regarding the later relationship between Smith and Parrish. Such questions were necessary for the government to prove that Parrish was involved in the conspiracy. Furthermore, no mention was ever made of the nature of Parrish's prior conviction, or of the details of his previous

crimes. All the jury heard was that Smith knew Parrish in prison, and the jury was instructed to disregard this fact. The district judge, who observed all these proceedings, denied Parrish's severance motions. The court was required to balance the possible prejudice to Parrish against the practical advantages of joint trial. *Salomon,* 609 F.2d at 1176–77. In the absence of any indication of government misconduct, and in view of the minimal prejudicial potential of Smith's statements, we cannot say that the district judge abused his discretion.

The convictions are AFFIRMED.