833 F.2d 1006
 24 Fed. R. Evid. Serv. 187
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jawad ABULHAWA, a/k/a Jawad Ateya Abulhawa, a/k/a George
Abulhawa, Defendant- Appellant.
 No. 87-5040.
 United States Court of Appeals, Fourth Circuit.
 Nov. 25, 1987.
 
 Before JAMES DICKSON PHILLIPS, CHAPMAN, and WILKINSON, Circuit Judges.
 George Vernon Laughrun, II (Goodman, Carr, Nixon & Laughrun on brief), for appellant;
 Jerry Wayne Miller, Assistant United States Attorney (Charles R. Brewer, United States Attorney; David Alan Graham, Assistant United States Attorney; H. Thomas Church, Assistant United States Attorney on brief), for appellee.
 PER CURIAM:
 
 
 1
 Jawad Abulhawa appeals his conviction in the United States District Court for the Western District of North Carolina for attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a), using communications facilities to commit, cause, or facilitate the commission of a felony in violation of 21 U.S.C. Sec. 843(b), and traveling in interstate commerce to promote an unlawful activity in violation of 18 U.S.C. Sec. 1952(a). Appellant contests several of the district court's evidentiary rulings, among them, permitting the government to cross-examine codefendant Stradford concerning prior bad acts. We find that, at most, these rulings constitute harmless error and affirm the judgment of conviction.
 
 I.
 
 2
 Between August 8 and 29, 1986, Abulhawa was contacted by two government informants seeking to arrange the sale of cocaine. After several days of negotiations, the informants flew to Charlotte, North Carolina, to attempt a "reverse sting buy." On August 29, Abulhawa, accompanied by the two informants, attempted to raise money to finance the proposed drug purchase. He succeeded in raising $9,500 in cash, $5,000 in travelers checks, and a quantity of gold jewelry. Abulhawa then went to the Holiday Inn in Charlotte with the cash, travelers checks, and jewelry, allegedly to consummate the cocaine deal. At that time, he and his codefendant, Stradford, were arrested.
 
 
 3
 Abulhawa and Stradford were indicted on charges of conspiracy to possess with intent to distribute cocaine, attempting to possess with intent to distribute cocaine, using communications facilities to commit or facilitate the commission of a felony, and traveling in interstate commerce to carry on an unlawful activity. They went to trial on February 23, 1987 where Abulhawa raised a defense of entrapment. On February 25, 1987, Stradford's motion for acquittal was granted on all charges. Appellant's motion for acquittal was granted only as to the conspiracy charge. The jury convicted Abulhawa on the remaining counts.
 
 II.
 
 4
 Abulhawa contends that the district court improperly permitted the government to cross-examine codefendant Stradford about drug use on the premises of the Safari Club which was owned by Stradford and the appellant. He argues that the evidence of "other bad acts" was introduced to show defendant's criminal character and propensity to commit crimes and was thus inadmissible under Rule 404(b) of the Federal Rules of Evidence.
 
 
 5
 It is clear that the government is permitted broad latitude under Rule 404(b) to introduce evidence of relevant prior acts once a defendant has raised a claim of entrapment thereby putting into issue his predisposition to commit the crimes with which he is charged. See Sorrells v. United States, 287 U.S. 435, 451-52 (1932); United States v. Ward, 793 F.2d 551, 555 (3d Cir.1986); United States v. Mazza, 792 F.2d 1210, 1223 (1st Cir.1986), cert. denied, 107 S.Ct. 1290 (1987); United States v. Parrish, 736 F.2d 152, 156 (5th Cir.1984). We need not decide, however, whether evidence of drug use in The Safari Club would have been admissible to show Abulhawa's predisposition, since the district court limited consideration of this line of questioning only to codefendant Stradford and not to the appellant.
 
 
 6
 On the request of Abulhawa's counsel the district court instructed the members of the jury that "this line of questioning by the prosecutor has to do only with the defendant Mr. Stradford and not the defendant Abulhawa." In United States v. Johnson, 610 F.2d 194 (4th Cir.1979), cert denied, 446 U.S. 911 (1980), this circuit articulated the rule governing the effect of limiting instructions. Quoting "the landmark case" of Throckmorton v. Holt, 108 U.S. 552, 567 (1901), the court held:
 
 
 7
 'The general rule is that if evidence which may have been taken in the course of a trial be withdrawn from the consideration of the jury by the direction of the presiding judge, that such direction cures any error which may have been committed by its introduction.... But yet there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the general objection may avail upon appeal or writ of error.' ...
 
 
 8
 Whether prejudicial error has been committed must be determined on the basis of the record in its entirety and the result will generally turn on the facts of each case.
 
 
 9
 Johnson, 610 F.2d at 196.
 
 
 10
 Here we are confident that, as to Abulhawa, the instructions effectively removed any impression left by the questioning, which we shall assume, arguendo, was improper. First, in response to the assistant United States attorney's questioning, Stradford denied being present when drugs were openly used in the Safari Club and further denied that the reason that the Safari Club was refused an alcohol permit was because drugs were possessed and openly used in the club. Second, the trial court, during the government's cross-examination of Stradford, clearly and carefully instructed the jury that the prosecutor's questions applied only to Stradford and not to Abulhawa. Third, shortly after Stradford's testimony, the district court granted Stradford's motion for acquittal. This action clearly signalled the jury that the judge did not think much of the case against Stradford, including any wrongdoing suggested by the government's line of questioning. Far from fostering a "strong impression" in the minds of the jury, the circumstances here would tend to diminish any effect this questioning had on the jury.
 
 
 11
 Further, in light of the other evidence against Abulhawa in this case, the government's questioning, at most, constitutes harmless, nonconstitutional error which must be disregarded under Rule 52(a) of the Federal Rules of Criminal Procedure. "The test for harmlessness for nonconstitutional error is whether it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial.... In considering the harmlessness of the error, it is proper to consider other evidence of the defendant's guilt." United States v. Davis, 657 F.2d 637, 640 (4th Cir.1981).
 
 
 12
 The evidence against Abulhawa in this case is overwhelming, both with respect to his involvement in the criminal activity and with respect to his predisposition to commit the crime in which he claims he was entrapped. There is no evidence of any resistance or reluctance by Abulhawa to participate in the cocaine deal. In fact, the evidence indicates quite the opposite--that Abulhawa was a willing and even eager participant. Abulhawa and the government informants negotiated the drug sale in a series of long distance phone calls to and from the informants in New York City. The transaction was a sizeable one--involving multikilos of cocaine and over $14,500. Abulhawa expended considerable effort to put together and close the sale. He flew to New York in an unsuccessful attempt to consummate the transaction. When the informants subsequently flew to Charlotte, he went to great lengths to raise the financing for the cocaine purchase. To this end he put together, not only $9,000 in cash, but also $5,000 in travelers checks and a quantity of gold jewelry. In light of this evidence, it is improbable that the jury's verdict would have been affected by the government's cross-examination of Stradford about drug use at the Safari Club. Any error in permitting the prosecutor to pursue this line of questioning was clearly harmless.
 
 III.
 
 13
 Abulhawa's other claims of error are similarly without merit.
 
 
 14
 We reject appellant's claim that evidence of a conversation between himself and an individual identified only as "Rita" concerning a drug transaction was inadmissible hearsay. Initially, the government witness, Talj, testified to what Abulhawa had told him about Rita. The witness testified that "He told me about Rita. She had the connection, and she's the one. She would put the money together to buy the cocaine." The testimony elicited from the witness was of Abulhawa's own statements which are admissible against him as non-hearsay under Rule 801(d)(2)(A) of the Federal Rules of Evidence.
 
 
 15
 Later, following repeated prompting by the court and the prosecutor instructing Talj to testify only to what Mr. Abulhawa told him about Rita, the prosecutor asked Talj, "What, if anything, did Mr. Abulhawa tell you during that afternoon about what Rita wanted?" Talj stated, "She wanted five keys--she's the one. She wants the five keys." Even if this answer were hearsay evidence of Rita's statements offered to prove the truth of those statements, its admission was at most harmless error. As discussed in the previous section, the evidence against Abulhawa was overwhelming, and the jury's verdict was unlikely to have been affected by the testimony. The various evidentiary rulings to which Abulhawa takes exception are simply inconsequential in relation to the totality of the evidence introduced against him at trial.
 
 
 16
 Finally, appellant claims that the district court erroneously limited the scope of his cross-examination of the government witness, Talj. We disagree.
 
 
 17
 "The scope and extent of cross-examination is peculiarly within the sound discretion of the trial judge." Chinn v. United States, 228 F.2d 151, 154 (4th Cir.1955). The district court acted within its discretion in sustaining the government's objection to a question concerning the witness' duplication of X-rated tapes where the defendant asserted no factual basis for the question. Nor did the court abuse its discretion in refusing to permit the defendant to ask the witness the name and address of his business where the government sought to protect the witness from harassment and threats. Quite apart from these two matters, the court permitted the defendant wide latitude in questioning Talj about the nature of his business, his business activities, and his income from and method of payment by the business.
 
 
 18
 For the foregoing reasons, the judgment of the district court is
 
 
 19
 AFFIRMED.