**STATE of Missouri, Plaintiff-Respondent,**

v.

**Richard P. VAN REGENMORTER, Defendant-Appellant.**

No. 55483.

Supreme Court of Missouri, Division No. 1.

March 8, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied April 12, 1971.

John C. Danforth, Atty. Gen., J. Michael Jarrard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Arthur B. Cohn, Waynesville, for defendant-appellant.

WELBORN, Commissioner.

A jury found Richard P. Van Regenmorter guilty of possession of marijuana and fixed his punishment at ten years' imprisonment. The defendant appealed from the ensuing sentence and judgment.

On July 15, 1969, Special Agent Clark of the Federal Bureau of Narcotics, telephoned appellant at the Post Hospital at Fort Leonard Wood. Appellant was a member of the United States Army, stationed at Fort Leonard Wood. Clark, using the code name "Oasis," inquired about the purchase of marijuana. Defendant told Clark that he had twenty pounds of marijuana. The agent asked about the source of the marijuana. Defendant told him that he would sell the twenty pounds he had and tell his source for $2,000. Clark told defendant he would have to

have time to get the money together and would be in touch.

On Tuesday, August 5, Clark called, using the code name "Oasis," and inquired whether defendant was still interested in selling the twenty pounds of marijuana. Defendant said that he had only ten or twelve pounds left, but he would sell it. Clark told defendant he would come to the Fort Thursday and get in touch with him. He told defendant he would call and let him know when he got there. Clark asked again about the source of the marijuana and defendant was willing to sell what marijuana he had and the location of his source for $2,000.

On August 7, Clark, accompanied by two other special agents of the Bureau of Narcotics, went to the Fort Leonard Wood area. They stopped at Waynesville and advised members of the Missouri Highway Patrol of their mission. They also spoke to C.I.D. agents at the Fort.

Clark placed a telephone call to defendant and was told how to reach defendant's quarters. Clark drove to that location, with other Bureau and C.I.D. agents following at a distance in another car. Clark went into a barracks building and knocked on the door of Room 6. When a voice asked who it was, Clark said "It's Oasis." Defendant opened the door and Clark entered the quarters. Defendant's roommate was in the room and defendant said "Go ahead and talk. The guy's all right. No problem." Clark asked defendant to see what he had to sell and defendant showed him three brown paper bags. Clark examined the contents and was satisfied they contained marijuana. Defendant told Clark that was a sample of what came from a field near Junction City, Kansas, the location of which he would give for $2,000. Clark asked the price of the marijuana alone and was told $500. After some haggling about the price, Clark told defendant he would give him $500 if his partner who was at the Champlin Truck Stop in St. Robert would agree to it. De-

fendant put the three paper bags in a laundry bag, changed clothes, and took the bag to Clark's car. He put the bag in the rear, entered the car and Clark drove to the Truck Stop. The other agents followed.

Clark stopped at the Truck Stop. Narcotics agent Francar came out to Clark's car and Francar, Clark and defendant discussed the price of the marijuana. The agents agreed to pay defendant $500. When Francar reached for the money, Clark signalled the highway patrolman who came to the car and placed defendant under arrest for possession of marijuana.

At defendant's trial on the charge, the state offered the testimony of three narcotics agents and a highway patrolman to substantially the above facts. Defendant admitted that the three bags, introduced into evidence, contained marijuana.

Defendant testified in his own behalf that he had the three bags in his possession on August 7, 1969. He stated that he left the Fort and went to St. Robert at Clark's "instance." He stated that he first came in contact with marijuana while in Vietnam, where the substance was on the open market. He admitted the conversations with Clark and said that he asked "about $500" for the marijuana. He acknowledged that he took the marijuana out of his locker and put it in Clark's auto in the back seat. He said the other agent looked at it at the station, said "It looks all right" and just then the state police drove up and placed him under arrest.

 On this appeal, appellant's first assignment of error arises from the trial court's refusal to give an entrapment instruction offered by defendant. The instruction would have required the jury to find the defendant not guilty if they found that "defendant was entrapped into committing the crime * * * by federal government agents by enticing the defendant to commit a crime against the State of Missouri * * *." Appellant's contention is based upon the fact that Fort Leon-

ard Wood is a United States Military Reservation over which the State of Missouri has ceded jurisdiction to the United States, §§ 12.030 and 12.040, RSMo 1969, V.A.M. S. Appellant contends that possession of the marijuana on the base was an offense under the Uniform Code of Military Justice and that a completed offense under that law had occurred when defendant had the marijuana on the base. He argues that the agent could have arrested defendant for the federal offense as soon as he was found in possession of the marijuana and that the agent instead lured defendant off the reservation to an area within the jurisdiction of the State of Missouri, where the arrest occurred.

Defendant relies on the case of Carbajal-Portillo v. United States, 9th Cir., 396 F.2d 944. In that case, defendant had willingly transported a package of heroin between two cities in Mexico, ending in a border city where he was to sell it to one Palomares. He found Palomares who said he did not have the money to pay for the heroin and suggested that defendant cross the border into the United States and sell it to one Ricos. Defendant left the heroin with Palomares, entered the United States, met Ricos, who wanted to purchase the heroin, and a price was agreed upon. Defendant was reluctant to bring the heroin into the United States and asked Ricos to cross the border into Mexico. Ricos said he could not do that because he was on parole and if there was to be a sale, it would have to be in the United States. After further discussion defendant agreed to meet Ricos the next day and deliver the narcotics for the agreed price. When defendant did so, he was arrested, Ricos being the assumed name of a narcotics agent. The United States attorney acknowledged that defendant would not have brought the narcotics into the United States but for the importuning of Ricos. In holding that these admitted facts demonstrated entrapment as a matter of law, the court stated (396 F.2d 946–947):

"* * * There can be no doubt that Carbajal was willing to sell heroin in Mexico; as noted above, this was the primary purpose of his long journey from his home to Mexicali. But the crimes of which Carbajal was accused and convicted involved importation of narcotics *into this Country* and selling it *here,* in violation of the laws of the United States. It is uncontroverted that Carbajal initially was reluctant to commit these crimes, and that he would not have done so except for the persuasion, deceitful representation and inducement by Ricos, the narcotics agent.

"The Government emphasizes that the sale of narcotics in Mexico is contrary to the criminal laws of that country, although it acknowledges that there may be considerable disparity in the extent to which such laws are enforced and infringers punished there as compared with the United States. The Government contends that inasmuch as Carbajal had no reluctance to commit a narcotics crime in Mexico, the fact that he was induced to transfer his violation to the United States should not allow him the defense of entrapment. In support of this contention, the Government relies upon United States v. Becker, 62 F.2d 1007 (2d Cir. 1933) and United States v. Edwards, 366 F.2d 853 (2d Cir. 1966). In both of those cases the defendants had been engaged in selling articles of contraband locally, and they were successfully prosecuted for having made similar sales across state lines pursuant to opportunities presented to them by federal agents. However, the record shows clearly in each instance that the defendant never considered himself limited by the boundaries of his own state; that he was just as willing to commit the federal crime as he was to commit the state offense; and that he promptly and without any urging made the interstate sale as soon as the opportunity was offered.

"Quite a different situation is presented here. Carbajal acknowledgedly displayed a reluctance to bring narcotics into this Country. Whether this reluctance

stemmed from fear of United States law enforcement or was due to some other factor is unknown and irrelevant. So long as that reluctance endured without being overcome, Carbajal would not be engaging in the illicit narcotics traffic that our laws are designed to prevent. Here, the narcotics agent did more than give Carbajal an opportunity to perpetuate (sic) such an offense; here, the agent affirmatively persuaded Carbajal to commit the crime in order that he might arrest him. This constituted entrapment and cannot lawfully form the basis for a prosecution. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848 (1958)."

We agree with the state that this case is distinguishable from Carbajal on the grounds that the court in Carbajal distinguished United States v. Becker and United States v. Edwards, supra. There was no reluctance on the part of appellant to leave the Fort and go into the jurisdiction of the State of Missouri. "[H]e was just as willing to commit the [state] crime as he was to commit the [federal] offense; * * *." Defendant, without reluctance or urging, left the Fort as soon as the possibility of a sale presented itself. Becker and Edwards, not Carbajal, lay down the law applicable to this case. The trial court did not err in refusing the instruction on entrapment offered by defendant.

Appellant argues that the state should have been required to produce some evidence of reasonable suspicion on the part of the agent that defendant was engaged in illegal activity. The charge against defendant was possession of marijuana. There is no basis whatever for charging that defendant's initial possession originated with the agents. Defendant admitted his possession before the agents entered the picture. The classical entrapment defense is not here involved and the question of reasonable suspicion is not material. However, there was evidence of pre-disposition on the part of defendant, mentioned below.

◼ Appellant's second assignment of error is in the trial court's overruling of his objections to testimony relative to sale of the information as to the location of the marijuana growing in Kansas. Appellant approaches this question primarily on the basis that it constituted evidence of another offense. However, he has not enlightened us as to what such other offense would be. Insofar as appears, the discussed sale was only of the location of the field in Kansas. There was no discussion of sale of other marijuana which had been reduced to possession. Nor is there any indication that the sale proposed was of any property. Information only was the subject of the transaction. Just what criminal offense that might involve is not clear.

In any event, the state had the right to produce evidence of the negotiations between the defendant and Clark. Inasmuch as the negotiations involved both the marijuana defendant had and information as to the location of the field, the state was not required to extirpate from its case the testimony pertaining to the sale of the location of the field. Testimony as to such statements tended to prove the commission of the offense charged and was admissible. State v. Page, Mo.Sup., 395 S.W.2d 146, 150[9]. Furthermore, the testimony was relevant on the attempted defense of entrapment, because it showed the predisposition of the appellant to handle and deal in marijuana. Therefore, the trial court's refusal to exclude the testimony was not error.

◼ Appellant's final point is that the cause should be remanded for new trial because the magistrate court failed to appoint counsel for defendant in that court. Defendant waived preliminary hearing without the assistance of counsel. Relying on Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, appellant now contends that failure of the magistrate to ap-

point counsel violated his right to counsel under the Sixth and Fourteenth Amendments of the Constitution of the United States. This case was tried prior to Coleman v. Alabama. Therefore, that case is not applicable. State v. Caffey, Mo.Sup., 457 S.W.2d 657, 663[9–11]. The claim of prejudice by reason of the fact that, had an attorney been appointed on a preliminary hearing, defendant would have been better prepared to present a defense of entrapment and to meet the testimony about the field in Kansas is too speculative to afford any basis for relief. Fleck v. State, Mo.Sup., 443 S.W.2d 100, 101[2].

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.