**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Linda PROCK, Defendant-Appellant.**

No. 10564.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 13, 1979.

John D. Ashcroft, Atty. Gen., Kathryn M. Krause, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Scott B. Tinsley, Anderson & Tinsley, Springfield, for defendant-appellant.

FRANK CONLEY, Special Judge.

Defendant was charged by information with the sale of a salt of amphetamine, a Schedule III controlled substance. Sections 195.017–6.(2)(a), 195.020 RSMo (Supp. 1975). After a trial by jury, defendant was found guilty and sentenced to a term of six years' imprisonment.

At the trial, defendant did not contest the fact that a sale had been made. Rather, defendant relied upon the defense of entrapment. Briefly stated, the state's evidence on this issue consisted primarily of the testimony of one Donald Potter, a paid informant. Potter testified that he first met defendant at a truck stop where they engaged in conversation for about five minutes. Potter returned to the truck stop the next evening, and defendant was there again. According to Potter's testimony, during the conversation which ensued during this second encounter, defendant indicated that she desired to sell "[s]ome drugs, speed, marijuana." In response, Potter told defendant that he was not interested, but that he had a friend who was. About a week later, Potter saw defendant again at a local club. During this third conversation defendant allegedly indicated that she was ready to sell "some drugs," i. e., "speed and marijuana." Potter then called his "friend", Miller, an undercover narcotics agent. When Miller arrived a meeting was arranged whereby the sale was consummated.

Defendant's evidence consisted of her own testimony, as well as the testimony of one Elsie Peltz, a friend. Defendant testified that she first met Potter at the club, and that she had never spoken to him at the truck stop. Both defendant and Peltz testified that it was Potter, not defendant, who initiated the conversation about drugs, and

that Potter kept "bugging" the defendant to obtain drugs for him. Defendant also testified that she had obtained the drugs from a trucker with whom she had never previously dealt, and that she did not permit drugs in her home.

Defendant's first ground for challenging her conviction is that the court erred in permitting Potter to testify regarding her alleged offer to sell marijuana. Defendant contends that she was charged with the sale of a salt of amphetamine and that the testimony regarding marijuana was therefore prejudicial and lacking in probative value. The testimony defendant objects to is as follows:

*Regarding conversation at truck stop*

"Q. Do you recall what, if anything, she said?

A. She said she would like to sell some.

Q. Some what?

A. Some drugs, speed, marijuana."

*Conversation at the club*

"Q. Do you know what, if anything, she indicated to you and what, if anything, you indicated to her?

A. She indicated to me at this time that she was ready to sell some drugs.

Q. Did she in any other manner indicate what type of drugs?

A. Yes, at this time she also said speed and marijuana."

It should be noted that this case does not, as defendant contends, involve the admission of evidence of a crime other than that for which defendant was tried. Defendant has cited no cases which suggest that an offer to sell drugs is a crime, nor do the statements necessarily imply that defendant had possession of drugs. However, even assuming the testimony does constitute evidence of a crime other than that for which the defendant was charged, the result would be the same.

█ When entrapment becomes an issue in a criminal trial, the state must prove the absence of entrapment just as though it were an element of the offense for which the defendant is being tried. *State v. Weinzerl*, 495 S.W.2d 137, 139[1] (Mo.App. 1973). In this state, the "origin of intent"

test is followed. *State v. Keating*, 551 S.W.2d 589, 592[1] (Mo. banc 1977), *cert. denied*, 434 U.S. 1071, 98 S.Ct. 1255, 55 L.Ed.2d 775 (1978); *State v. Devine*, 554 S.W.2d 442, 446[3] (Mo.App.1977); *State v. Long*, 550 S.W.2d 854, 857[3] (Mo.App.1977). Under this test, the state must show that the criminal intent necessary to commit the crime originated with the defendant, rather than with agents of the state. *State v. Day*, 506 S.W.2d 497, 500[5] (Mo.App.1974); *State v. Weinzerl, supra*, at 142[8]. Consequently, the state had the burden of proving, beyond a reasonable doubt, that defendant "was ready and willing to engage in the criminal activity with the informant." *State v. Devine, supra*, at 448.

Defendant does not contend that the admission of evidence regarding offers to sell "speed" was improper. Indeed such a contention would be frivolous as this type of evidence clearly relates to defendant's intent and predisposition to sell "speed". Nevertheless, defendant argues that the reference to marijuana was not necessary to the prosecution's case, and that the failure to suppress such evidence was reversible error. Defendant would have the prosecution carefully dissect testimony regarding intent and predisposition to screen out any words attributable to defendant which are to some extent cumulative, and which may tend to place defendant in a less favorable light. Such a contention cannot be accepted.

Had defendant offered to sell only marijuana during the first meeting, such evidence would be admissible as relevant to the issue of predisposition.

█ There is no requirement that the state's evidence of predisposition pertain precisely to the crime defendant actually committed. So long as the evidence relates to conduct evidencing wrongful intent of the same nature as involved in the actual offense, it may be properly considered on the issue of predisposition. *State v. Hyde*, 532 S.W.2d 212, 215 (Mo.App.1975). We need not decide whether testimony regarding a discussion of completely unrelated conduct such as murder or robbery would be inadmissible, as the sale of marijuana

clearly involves the same type of wrongful intent as does the sale of "speed".

In *State v. Van Regenmorter*, 465 S.W.2d 613, 617 (Mo.1971), the defendant was convicted of possession of marijuana. At the trial, the narcotics agent who had arrested the defendant testified that the defendant had agreed to sell, in addition to the drugs in question, information as to the location of the field in which the marijuana had been grown. The defendant argued that the evidence pertaining to the field should not have been admitted, but the court concluded:

"In any event, the state had the right to produce evidence of the negotiations between the defendant and Clark. Inasmuch as the negotiations involved both the marijuana defendant had and information as to the location of the field, the state was not required to extirpate from its case the testimony pertaining to the sale of the location of the field. Testimony as to such statements tended to prove the commission of the offense charged and was admissible. *State v. Page*, Mo. Sup., 395 S.W.2d 146, 150[9]. Furthermore, the testimony was relevant on the attempted defense of entrapment, because it showed the predisposition of the appellant to handle and deal in marijuana. Therefore, the trial court's refusal to exclude the testimony was not error."

■ In this case the prosecution's evidence contained testimony of conversations which, if believed, would prove that defendant was predisposed to traffic in unlawful drugs. As in *State v. Van Regenmorter, supra*, we reject defendant's argument that the prosecutor must excise relevant testimony because it is somewhat cumulative. The trial court properly permitted testimony of the entire context of the negotiations. *State v. Burr*, 542 S.W.2d 527 (Mo.App. 1976) as well as the other authority cited by defendant, are clearly distinguishable from the case upon the grounds that they do not involve an issue of entrapment.

Defendant's second contention on appeal is that the prosecutor's closing argument improperly invited the jury to decide the case based upon whether they approved of defendant's conduct, rather than upon the instructions of the court. The argument in question is as follows:

STATE: ". . . You are the conscience of this community. You have an obligation to yourselves and to this community. If this is the type of conduct, as the evidence shows, that you approve of and agree with—"

DEFENSE: "Your Honor, I will object —"

THE COURT: "Your time is up, Mr. Geisler."

STATE: "Thank you, Your Honor."

THE COURT: "Objection overruled."

STATE: "—then acquit her. . . ."

■ The rule in Missouri is that specific objections are required to arguments of counsel. *State v. Lang*, 515 S.W.2d 507, 511[6] (Mo.1974); *State v. Snow*, 558 S.W.2d 414, 416[2] (Mo.App.1977); *State v. Harper*, 553 S.W.2d 895, 896–897[1] (Mo.App.1977); *State v. Miceli*, 549 S.W.2d 113, 116[3] (Mo. App.1977). Defendant did not call the trial court's attention to any ground or reason for the objection, or request any action by the court; therefore, the defendant's objection does not preserve any question for appeal.

■ Although defendant has not claimed plain error, we note that the prosecutor's argument clearly does not rise to "manifest injustice". V.A.M.R. Rule 27.20(c). Defendant's argument that the prosecutor's single interrupted statement may have led the jury to ignore the instructions read to them by the court, presumably explained to them by the defendant's attorney, and presented to them in writing, is simply too speculative to warrant serious consideration. The prosecutor's argument, taken as a whole, merely emphasizes the jury's duty to enforce the law. This is proper argument and the single questionable statement, though possibly misleading when taken out of context, is not grounds for reversal.

■ Defendant's final point is that the court erred in refusing to permit defendant to cross-examine state witnesses Potter and Miller as to the location of agent Miller's residence as of the date of the offense. Normally, where the credibility of an im-

portant state witness is in issue, the right to confrontation includes the right to inquire as to the address of the witness. *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Caldwell v. Minnesota*, 536 F.2d 272, 273 (8th Cir. 1976). The right is not absolute, however, as both *Smith* and *Alford* recognized the right of a trial court to protect a witness "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him." *Alford*, 282 U.S. at 694, 51 S.Ct. at 220, quoted in *Smith*, 390 U.S. at 133, 88 S.Ct. at 750. This exception has also been held to permit a limitation on inquiry regarding the witness' address where disclosure might endanger the personal safety of the witness, and where the defendant has made no showing of materiality. *Caldwell v. Minnesota, supra,* at 273; *State v. Kirk*, 510 S.W.2d 196, 200 (Mo.App.1974).

 In this case defendant suggests that no protection should have been afforded agent Miller because he is an officer of the law, and because he had revealed his identity by taking the stand and giving his name. We find no reason for denying an officer and his family the protection from harm or harassment which may be afforded other witnesses. Defendant's argument that the disclosure of Miller's name made it possible for him to be located and that there was therefore no further interest to protect, is groundless. Locating one's home from knowledge of his name is clearly not so easily accomplished as defendant suggests or defendant would have obtained such information himself for trial.

The question then is whether defendant's right to know Miller's address outweighed the court's interest in protecting him from harm or harassment. It should first be noted that defendant does not contend, as in *Smith* and *Alford*, that the witness' address was desired for purposes of "identifying the witness with his environment." There is no reason to suspect that Miller's place of residence would, in and of itself, lend any support to defendant's effort to discredit his testimony. Moreover, Miller's credibility was not particularly critical.

The crime itself was admitted, and the crucial evidence rebutting entrapment came from Potter, not Miller.

Although Miller's address does not of itself aid defendant's case, defendant nevertheless argues that the address was material because it might have revealed an incongruity in the state's case. Defendant had elicited testimony from Potter on cross-examination that Potter "believed" he had called Miller later in the evening after the entire transaction in question had taken place. According to Potter the call was made "[h]alf an hour, maybe" after Miller left him at his vehicle. Potter "believed" the call was made to Miller at Region II Headquarters.

Cross-examination of Miller disclosed that Miller had gone home after the incident, and he did not recall whether he had gone to Region II Headquarters or not later that evening. From this testimony defendant hoped to impeach the credibility of the witnesses by showing that Miller's residence was so located that he could not have gone home and then to Region II Headquarters within approximately 30 minutes.

Apart from the fact that the testimony defendant sought to impeach concerned only collateral matters which were not in issue, the hopes of impeachment were unrealistic. Potter's testimony was vague, and already contradicted to some extent by Miller's testimony that he did not recall going to Region II Headquarters. Defendant was permitted to question Miller regarding distances between the various points and approximate driving time. Any more precise information regarding the location of Miller's house would have been of little or no value. Consequently, if it was error to deny defendant the right to question the witnesses regarding Miller's address, it was clearly harmless error.

BILLINGS, C. J., and HOGAN, J., concur.