STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. PAUL GIBBONS, DEFENDANT-APPELLANT.

Argued October 7, 1986—Decided January 15, 1987.

*William Welaj,* Designated Counsel, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*Paul Gibbons* submitted a letter in lieu of a supplemental brief *pro se.*

*Richard W. Berg,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General of New Jersey, attorney, *Richard W. Berg* and *Jack R. Martin,* Special Deputy Attorney General, on the briefs).

The opinion of the Court was delivered by

HANDLER, Justice.

Defendant, Paul Gibbons, was tried before a jury on two counts each of possession, possession with intent to distribute, and distribution of methamphetamine. Defendant raised the affirmative defense of entrapment. The jury rejected the defense, returning a verdict of guilty on all six counts.

In its charge to the jury, the trial court instructed the jury that in assessing defendant's entrapment defense, defendant's two prior convictions for receiving stolen property and single previous conviction for larceny and breaking and entering could be considered in evaluating defendant's predisposition to commit the drug offenses, as well as for purposes of appraising defendant's general credibility. Defendant unsuccessfully raised objections to this instruction at the close of the charge, and subsequently in a motion for a new trial. Following the jury verdict, the trial court merged each of the counts of possession into the distribution convictions and sentenced defendant to two concurrent terms of six years in state prison. On appeal, the Appellate Division affirmed in a reported decision, *State v. Gibbons*, 202 *N.J.Super.* 297 (1985). We granted certification, limited to the issue of whether the defendant's prior property-related convictions could properly be used to demonstrate a propensity to commit the drug-related offense.[1] 103 *N.J.* 456 (1986). For the reasons set forth in this opinion, we now reverse and remand for a new trial.

## I.

Defendant's arrest and convictions stemmed from two meetings between defendant and an undercover police detective in November of 1981. The undercover officer, Robert Pincus of the Atlantic City Police Department, and defendant related differing accounts of these two meetings. They agreed that a

---

[1]Defendant, *pro se*, also petitioned for certification on a claim of ineffective assistance of counsel. The Court denied this petition.

confidential paid informant, identified as Linda, introduced defendant to Pincus on November 22, 1981. Pincus testified that at that initial meeting, which occurred in the informant's apartment, the defendant sold Pincus a small quantity of methamphetamine in exchange for $20. Pincus further testified that after this transaction he informed the defendant that he was interested in purchasing a larger quantity of the same type of drug, whereupon the defendant quoted him prices for varying amounts. According to Pincus, the defendant then provided him with his phone number, and agreed that Pincus would contact the defendant the next day to arrange the details of the drug purchase.

Pincus testified that he called the defendant on November 23, 1981, and arranged to meet the defendant later in the day in Atlantic City to purchase methamphetamine. Pincus related that he met with the defendant on November 23, 1981, eventually proceeding to a room in the Caesar's Boardwalk Regency hotel. Pincus stated that once at the hotel, the two discussed future drug purchases and a trip to Philadelphia to buy more drugs. Defendant then produced approximately 2.5 grams of methamphetamine for Pincus's inspection and a $30 bag for Pincus to sample. Pincus subsequently signalled his fellow officers, who entered the room under the pretense of a room service delivery. Atlantic City Detectives McKnight and Mooney, along with a Caesar's security agent, were let into the room by Pincus, and defendant was placed under arrest. Pincus testified that when the defendant learned of Pincus's real identity, the defendant stated, "I thought you were Pincus but I wasn't sure." Detective McKnight confirmed this statement. The State contends that defendant was referring to Pincus's reputation in the area as an undercover narcotics officer.

Defendant admitted that he was a methamphetamine addict, thereby conceding guilt on the possession counts, but claimed that he neither distributed nor intended to distribute the drug. Defendant testified that he first began to use methamphetamine to relieve the pain resulting from crushed heels sustained

in an industrial accident. According to defendant, Linda called him 4 or 5 times on a day in November asking him to sell her drugs. He subsequently "stopped by" her apartment, where he found Pincus, whom he assumed was the informant's boyfriend, and the informant. Defendant testified, "he [Pincus] sat down at the table and I took the speed out of my pocket and gave it to Linda, and he put twenty dollars on the table which I just thought was the courtesy of a boyfriend or something like that." The defendant further testified, in contradiction to Pincus, that he left the $20 on the table and that Linda never left the room. Pincus then asked defendant about obtaining more methamphetamine, whereupon defendant "reluctantly" and "abstractly" related prices to Pincus.

Defendant testified that Pincus called him at home the following day, and invited him to take a ride to Philadelphia to buy some clothes with $16,000 that the detective's brother had just won in a casino. Defendant agreed to meet Pincus, thinking that he could "separate him from some of that money." Defendant testified that when he met Pincus the next day, he was carrying drugs for his own personal use and that only after Pincus asked him several times for drugs did he put two "lines" on a table for them to use. Defendant denied stating "I thought you were Pincus" when the officers entered the hotel room, although he conceded saying "something to that effect regarding school with him."

At the close of the State's case, the trial court held a *Sands* hearing[2] and determined that the State could introduce evidence of defendant's three prior convictions—receiving stolen property in 1972, larceny and breaking and entering in 1975, and receiving stolen property in 1976—for purposes of impeaching the defendant's credibility. Thereafter the trial court instructed the jury that the prior convictions could be considered

---

[2]This is required under *State v. Sands*, 76 *N.J.* 127 (1978), to determine the admissibility of prior convictions.

also on the issue of defendant's predisposition to commit the offense as well as to assess the defendant's credibility.

## II.

■ The New Jersey Code of Criminal Justice expressly provides entrapment as an affirmative defense. *N.J.S.A.* 2C:2–12.[3] The Court has interpreted *N.J.S.A.* 2C:2–12 as requiring that a defendant claiming entrapment prove both subjective and objective entrapment; he must prove, in other words, both "that the police conduct ... by its nature created a 'substantial risk' that the crime would be committed by an average person who was not otherwise ready to commit it" (objective element) and "that the police conduct in fact caused him to commit the crime" (subjective element). *State v. Rockholt,* 96 *N.J.* 570, 581 (1984). Prior to the enactment of the entrapment defense as part of the Code, our common law had recognized the subjective entrapment defense, which allowed a defendant to demonstrate that prior to the commission of the crime, he had no predisposition or intent to commit the crime and that the law enforcement

---

[3] The statute provides:

    a. A public law enforcement official or a person engaged in cooperation with such an official or one acting as an agent of a public law enforcement official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such offense by either:

    (1) Making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

    (2) Employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

    b. Except as provided in subsection c. of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. The issue of entrapment shall be tried by the trier of fact.

    c. The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

authorities were responsible for inducing him to commit the crime. *State v. Dolce,* 41 *N.J.* 422 (1964). We had also recognized the relevance of objective evidence of entrapment in particular circumstances. The entrapment defense could be established by objective evidence of especially egregious police misconduct, even if predisposition was shown. *State v. Talbot,* 135 *N.J.Super.* 500 (App.Div.1975), aff'd, 71 *N.J.* 160, 167–68 (1976) ("as the part played by the State in the criminal activity increases, the importance of the factor of defendant's criminal intent decreases, until finally a point may be reached where the methods used by the State to obtain a conviction cannot be countenanced, even though a defendant's predisposition is shown"). *See State v. Molnar,* 81 *N.J.* 475 (1980).

With respect to subjective entrapment we had followed the general rule regarding the use of other-crimes evidence as relevant to the defendant's predisposition to commit the crime charged. In *Dolce,* the Court, relying on *Sorrells v. United States,* 287 *U.S.* 435, 53 S.Ct. 210, 77 *L.Ed.* 413 (1932), stated:

> When a defendant interposes the defense of entrapment, the State may introduce evidence of his predisposition to commit crime. The purpose is to demonstrate that he was not an innocent person who would not have committed the offense were it not for the proposal and inducement of the police officer. Predisposition is evidenced by *previous conviction of crime,* reputation for criminal activities, ready compliance with minimal inducement, or easy yielding to the opportunity to commit the offense. [41 *N.J.* at 433 (emphasis added).]

Although the Court also expressed hesitancy over the admission of prior conviction evidence in the State's case in chief, it endorsed the use of such evidence on cross-examination not only to affect credibility but also to show a defendant's propensity to commit crime when a defendant's direct testimony or other evidence adduced by him created a factual issue regarding the defense of entrapment. *Id.* at 434. Our pre-Code approach comports with the general common law according to which the prosecution could introduce "other-crimes" evidence on the issue of a defendant's predisposition to commit crime. *See generally* Annotation, "Admissibility of Evidence of Other

Offenses in Rebuttal of Defense of Entrapment," 61 *A.L.R.*3d 293 (1975) (1986 supp. at 14) (collecting cases).

Because the New Jersey Code of Criminal Justice, in codifying the defense of entrapment, encompassed subjective as well as objective elements, *State v. Rockholt, supra,* 96 *N.J.* 570, the defendant's predisposition to commit the offense and the relevance of prior crimes to the issue of the defendant's predisposition remain at issue in terms of what caused the crime. In the context of this case, this proposition of law poses a series of difficult problems: what kinds of prior crimes are admissible to show such predisposition; what relationship exists between prior crimes relevant to predisposition and prior crimes relevant to credibility; and can prejudicial error be demonstrated if evidence of prior crimes admissible for one purpose but not another is admitted for both purposes?

### III.

We deal first with the question of what kinds of prior crimes are relevant to demonstrate a predisposition to commit the crime currently charged. Preliminarily, we consider defendant's claim that Evidence Rule 55 itself governs and restricts the use of prior-crimes evidence in connection with the entrapment defense.

By its language, the Rule precludes any use of other-crimes evidence to prove "disposition to commit crime." It provides:

> Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specific occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.

The *Dolce* decision, authorizing the use of such other-crimes evidence, was rendered prior to the adoption of the New Jersey

Rules of Evidence,[4] and thus does not address the potential impact of Evidence Rule 55.

Despite the language of Evidence Rule 55, defendant does not contend that Evidence Rule 55 imposes a blanket exclusion of other-crimes evidence to prove predisposition in an entrapment case, nor has the Rule ever been so interpreted. The drafters of the New Jersey Evidence Rules, intending to incorporate the common law, clearly contemplated that the common-law rule of *Dolce* would not be altered by the Evidence Rules, viewing admission in the entrapment context as an implied exception to Evidence Rule 55. Comment 11 to Evidence Rule 55 states:

> There is one situation where the State in a criminal case may introduce other crime evidence to show that a defendant is predisposed toward committing crime as a basis for an inference that the defendant committed the offense in question. This occurs when the defendant raises the defense of entrapment, i.e., when he states that his criminal conduct was the direct product of the creative activity of law enforcement officials. [*N.J. Rules of Evidence* (Anno. 1986), Comment 11 to *Evid.R.* 55.]

Additionally, in *State v. Rockholt, supra,* 96 *N.J.* 570, this Court, without mentioning Rule 55, noted that "under certain circumstances a defendant's prior convictions ... might be admissible on the issue of predisposition" in the entrapment context. *Id.* at 582–83. Moreover, while Evidence Rule 55 forbids the use of other-crimes evidence to support the inference that the individual "committed a crime ... on another specified occasion," a defendant pleading entrapment has conceded the commission of acts that might otherwise constitute criminal conduct. *Cf. State v. Rockholt, supra,* 96 *N.J.* at 583 (prior crimes may be admissible to prove predisposition in an entrapment case but not admissible to prove the defendant committed the criminal act). Hence, other-crimes evidence offered to rebut an entrapment claim is not used to establish that

---

[4]In 1967 New Jersey comprehensively codified its common-law rules of evidence in the New Jersey Rules of Evidence. Rules 1(1) through 1(13) and 23 through 40 were adopted in 1960. The remaining Rules were adopted in 1967.

the defendant committed the crime, but to prove, as an independent issue, that the defendant was predisposed. Under this view, the use of other-crimes evidence of predisposition in entrapment cases is proof of "some other fact in issue," within the bounds of Evidence Rule 55.

We have long recognized that the restrictions upon the admissibility of other-crimes evidence to prove predisposition stem not so much from a lack of probative worth as from the potential for unfair prejudice. The danger exists that a jury, aware of other-crimes evidence, may convict a defendant not on the evidence of the specific crime at issue but because of the perception that the defendant is a "bad" person in general. *See State v. Miller,* 159 *N.J.Super.* 552, 562 (App.Div.1978); *N.J. Rules of Evidence* (Anno.1986), Comment 1 to *Evid.R.* 55; W. LaFave and A. Scott, *Criminal Law* (1972), § 48 at 373. Consequently, when the State seeks to use prior convictions, for example, to impeach credibility or to prove another issue in dispute, courts have resorted to limiting instructions and evidentiary hearings out of the presence of the jury to ensure that the jurors' minds are not improperly diverted. *See State v. Humphrey,* 183 *N.J.Super.* 580, 586 (Law Div.1982), aff'd, 209 *N.J.Super.* 152 (App.Div.1986). In the context of entrapment, courts have tried to ensure that the probative worth of such evidence when used to show predisposition will outweigh its prejudicial effect by requiring that the prior convictions be for crimes *similar* to the crime for which the defendant is being prosecuted. The difficulty, of course, lies in fixing the scope of "similarity," for any two given crimes can be characterized, at a sufficiently abstract level, as "similar."

The majority of the federal cases considering this issue have insisted on some demonstrable indicia or tangible degree of similarity. Some have focused explicitly on the object of the crime and its *modus operandi.* In *United States v. Pagan,* 721 *F.*2d 24, 31 (2d Cir.1983), the Second Circuit stated:

evidence of ... prior crimes must involve offenses similar to those in question in order to constitute relevant rebuttal evidence. [Citations omitted.] Here the

prior conviction for dealing in stolen automobiles is so dissimilar from heroin trafficking that it would not have been relevant to demonstrate ... predisposition to distribute drugs.

In effect, the court required a specific or particularized predisposition to commit the charged offense—predisposition to distribute drugs—rather than a broader, intent-based predisposition that would encompass both dealing in drugs and dealing in stolen automobiles. In *United States v. Hairrell,* 521 *F.*2d 1264 (6th Cir.), *cert.* denied, 423 *U.S.* 1035, 96 *S.Ct.* 568, 46 *L.Ed.*2d 409 (1975), the court asserted that "the fact that [defendant] had once stolen a television set told nothing about his predisposition to transfer and deliver counterfeit money." The court explained: "The defense of entrapment does not give the prosecution the right to put a defendant's general character into issue. . . . Only evidence . . . which tends to show a predisposition to 'willingly engage in the specific conduct involved' in the charge is admissible." *Id.* at 1268 (citations omitted); *see also United States v. Daniels,* 572 *F.*2d 535, 538 (5th Cir.1978) (post-crime offense of possession of sawed-off shotgun "is not probative of a defendant's predisposition to violate the drug laws"); *United States v. Blankenship,* 775 *F.*2d 735, 739 (6th Cir.1985) (impermissible to use other-crimes evidence to prove predisposition to commit criminal acts generally; only other crimes of same nature as those charged are admissible to prove predisposition to commit charged offense); *De Jong v. United States,* 381 *F.*2d 725, 726 (9th Cir.1967) (prior offenses of burglary and drunkenness dissimilar to charge of drug distribution); *United States v. Clemons,* 503 *F.*2d 486, 489 (8th Cir. 1974) (prior criminal conduct introduced to rebut defendant's claims of inadvertence and mistake "must involve an offense similar in kind and reasonably close in time to the charge at trial"). *But see United States v. Murzyn,* 631 *F.*2d 525 (7th Cir.1980), *cert.* denied, 450 *U.S.* 923, 101 *S.Ct.* 1373, 67 *L.Ed.*2d 351 (1981) (in prosecution for sale of stolen automobiles, evidence that defendant threatened a federal agent with a gun, solicited an assassin, made derogatory racial and sexual re-

marks and stole from a nursery and construction site admissible to rebut claim of government coercion).

Other federal decisions have required less specificity as to the particular purpose or mechanics of the respective crimes. Some have focused on a more abstract kind of mental state that characterizes both the prior and current crimes, *e.g.*, *United States v. Williams*, 705 *F.*2d 603, 623 (2nd Cir.1983), *cert.* denied, 464 *U.S.* 1007, 104 *S.Ct.* 524, 78 *L.Ed.*2d 708 (1983) (prior attempts to peddle influence "morally indistinguishable" from "ABSCAM" offenses charged and therefore probative on predisposition); *United States v. Apuzzo*, 555 *F.*2d 306, 307 (2nd Cir.1977), *cert.* denied, 435 *U.S.* 916, 98 *S.Ct.* 1470, 55 *L.Ed.*2d 507 (1978) (conviction for possession of untaxed cigarettes is similar to indicted offense—dealing in firearms without a license—because both involve intent to "defraud the revenue"). Still others have relied on an *ad hoc* declaration that the crimes could be considered "similar". *See United States v. Parrish*, 736 *F.*2d 152, 156 (5th Cir.1984) ("the previous conviction was for a crime very similar to that for which [defendant] was on trial, and was therefore strongly relevant to the issue of predisposition"); *United States v. Moschiano*, 695 *F.*2d 236, 244 (7th Cir.1982), *cert.* denied, 464 *U.S.* 831, 104 *S.Ct.* 110, 78 *L.Ed.*2d 111 (1983) ("subsequent similar acts may, under proper circumstances, be admissible to prove the defendant's predisposition to commit the crime charged"); *United States v. Biggins*, 551 *F.*2d 64, 68 (5th Cir.1977) ("evidence of prior similar offense was relevant to show predisposition and intent").

While most state courts have not specifically addressed the type of other-crimes evidence that is admissible to prove predisposition, several have, like the federal courts, limited the use of other-crimes evidence to similar offenses.[5]  In *State v. Burcia-*

---

[5]The only states that have not limited the rebuttal use of other crimes to similar crimes are those that have precluded the issue of predisposition

*ga,* 146 *Ariz.* 333, 705 *P.*2d 1384 (Ariz.Ct.App.1985), an Arizona appellate court ruled that a prior conviction for theft could not be used to rebut defendant's claim of entrapment on the charge of trafficking in stolen property because "the past conduct must be of a *sufficiently similar nature* to the crime charged to show a predisposition to commit that crime." *Id.* 705 *P.*2d at 1386 (emphasis supplied); *see State v. Batiste,* 363 *So.*2d 639 (La.1978); *State v. Guarisco,* 466 *So.*2d 1356 (La.Ct.App.), writ denied, 474 *So.*2d 946 (La.1985); *Bowser v. State,* 50 *Md.App.* 363, 439 *A.*2d 1 (Md.1981).

It is difficult, if not impossible, to synthesize the results of these myriad decisions into a principled standard for determining similarity. Clearly, under a standard cast broadly in terms of intent, any given offenses could be tortured into a posture of similarity, while under a standard worded narrowly in terms of specific acts, prior offenses that seem relevant to predisposition (*e.g.,* manufacture of drugs, when the current charge is distribution), might be held dissimilar. The impossibility of defining precisely the scope of the standard does not justify, however, an *ad hoc* determination. It remains necessary to analyze and compare prior and current crimes as to common features for purposes of evaluating their similarity, and to develop standards to guide courts with greater consistency in their assessment of similarity. Consequently, when confronted with this issue, a court should identify those factors or elements that are necessary predicates of the respective crimes. *See generally N.J.S.A.* 2C:1–14(h) and 2C:1–14(i) (defining, respectively, "Element of an offense" and "Material element of an offense"). It should then determine how many factors essential to each crime are shared, and whether they

---

altogether. *See People v. Benford,* 53 *Cal.*2d 1, 345 *P.*2d 928 (Cal.1959); *State v. Klauer,* 226 *N.W.*2d 803 (Iowa 1975); *State v. Nelsen,* 89 *S.D.* 1, 228 *N.W.*2d 143 (S.D.1975). California has implemented the purely objective form of the entrapment defense, rendering irrelevant evidence of other crimes. *See People v. Barraza,* 23 *Cal.*3d 675, 153 *Cal.Rptr.* 459, 591 *P.*2d 947 (1979).

are shared to such an extent that the conclusion that the crimes are "similar" is justified in light of all the surrounding circumstances. In undertaking this analysis and comparison the court should consider such factors as the object of the crime, the methods used in perpetrating the crime, and the particular mental state required for the commission of the crime. For example, the object of the crime could relate to drugs, stolen goods, property, gambling, physical violence, etc. The methods for committing a crime could encompass robbery, theft, deception, assault, threats, conspiracy, etc. Mental states can relate to purpose, knowledge, intent or motive related to the particular crime. It follows that the greater the number of these coinciding factors, the stronger will be the similarity between the prior and current crimes.

In this case, the Appellate Division in determining admissibility purported not to apply as a standard the "similarity" of the prior conviction. It applied, instead, "fairness in the particular case" as the controlling test. It might be argued, however, that the Appellate Division impliedly used a "similarity" standard because it determined that "[t]he prior convictions [for burglary and larceny] all involved dishonesty and theft, crimes familiar to the drug milieu." *State v. Gibbons, supra,* 202 *N.J.Super.* at 301. Thus, the court ruled implicitly that Gibbons' prior convictions for burglary and larceny were "similar" to the current charge of narcotics distribution, because all either directly involved, or were implicated in, "dishonesty and theft."

We disagree with the court's conclusion that the prior crimes were similar to or sufficiently like the current crimes and therefore relevant for the purpose of demonstrating predisposition. It seems obvious that the object of the respective crimes is different. The current charge related to drugs; the prior crimes, according to the record and as presented to the jury, related to offenses against property. The criminal methods were also disparate; the current offense involved acts of drug

distribution, while the prior crimes involved the receipt of stolen property and burglary in order to steal. Finally, the mental states were different in that the drug offense entailed a purpose or plan to distribute drugs, whereas the prior offenses presumably required a purpose to steal.[6]

We are satisfied, moreover, that under prevailing case law the prior crimes would not be considered probative on the issue of predisposition. In cases in which the pending charge has been drug distribution, the strongest argument for similarity has been made when the prior crime has likewise involved distribution. *See, e.g., State v. White,* 86 *N.J.Super.* 410, 421 (App.Div.1965) (in view of defense of entrapment, evidence of previous narcotics sales by defendant "admissible as evidence of the defendant's predisposition to commit crime"); *United States v. Segovia,* 576 *F.*2d 251 (9th Cir.1978) (distribution of marijuana relevant to predisposition to distribute cocaine; drug need not be identical); *State v. Prock,* 577 *S.W.*2d 663 (Mo.App. 1979) (prior offer to sell marijuana relevant to predisposition to sell cocaine); *United States v. Biggins, supra,* 551 *F.*2d at 68 (sale of cocaine similar to allegation of possession and distribution of heroin); *United States v. Sonntag,* 684 *F.*2d 781, 788 (11th Cir.1982) (evidence of prior sales of pills, marijuana, cocaine admissible in prosecution for cocaine distribution); *State v. Carrillo,* 80 *N.M.* 697, 460 *P.*2d 62 (Ct.App.1969) (prior heroin sales relevant to predisposition to distribute heroin); *State v. DeWolfe,* 121 *R.I.* 676, 402 *A.*2d 740 (1979) (in prosecution for various narcotics offenses, state entitled to introduce

---

[6]The State has moved to supplement and to clarify the record to reflect that defendant's prior crimes were drug-related, in that defendant was a heroin addict at the time they were committed. The Court has denied these motions, on the ground that such evidence, not having been produced at trial, is irrelevant to what occurred at trial and cannot appropriately be considered on appellate review. This ruling, however, in no way precludes the State from proffering this evidence at a retrial and arguing that it should be considered relevant to the issue of defendant's predisposition, although we intimate no views as to the merits of such a contention.

evidence of prior conviction for drug sale and prior sales to rebut entrapment defense); *Brown v. State,* 392 *So.*2d 1248 (Ala.Crim.App.1980) (evidence of prior sale of marijuana admissible to show defendant's "intent" to rebut claim of entrapment on charge of selling marijuana); *Walls v. State,* 8 *Ark.App.* 315, 652 *S.W.*2d 37 (Ark.Ct.App.), aff'd, 280 *Ark.* 291, 658 *S.W.* 2d 362 (1983) (evidence of additional drug sales admissible to rebut inference that defendant entrapped on indicted drug sale); *see also United States v. Moschiano, supra,* 695 *F.*2d at 244 (attempt to *buy* Preludin held similar to sale of heroin because "both transactions in essence involved ... the distribution of commercial quantities of controlled substances"); *cf. Schmitt v. State,* 160 *Ind.App.* 109, 310 *N.E.*2d 73 (Ind.Ct.App.1974), *cert.* denied, 420 *U.S.* 929, 95 *S.Ct.* 1129, 43 *L.Ed.*2d 400 (1975) (to rebut entrapment claim in prosecution for distribution of L.S.D., proper to introduce evidence of defendant's reputation as a drug trafficker).

The case for similarity is attenuated somewhat when the prior conviction is for possession, since possession in small amounts is consistent with personal use. Not surprisingly, courts have divided as to whether mere possession of drugs is sufficiently similar to the distribution of drugs to show a predisposition to distribute. Compare *United States v. Bramble,* 641 *F.*2d 681, 683 (9th Cir.), *cert.* denied, 459 *U.S.* 1072, 103 *S.Ct.* 493, 74 *L.Ed.*2d 635 (1981) (prior conviction for possession of marijuana irrelevant to predisposition to distribute cocaine); *State v. Stanley,* 288 *N.C.* 19, 215 *S.E.*2d 589, 598 (1975) (prior conviction for possession of marijuana "would not indicate a predisposition to distribute LSD"); and *State v. Ross,* 25 *Ariz. App.* 23, 540 *P.*2d 754 (1975) (evidence that defendant had been a heroin buyer not informative on predisposition to sell heroin), with *State v. Matheson,* 363 *A.*2d 716, 723 (Me.1976), in which the court held, as to a defendant charged with distribution, that "evidence that the appellant had committed offenses of the *same general character* as that for which he was tried, *i.e.,* possession and unlawful use of drugs is evidence of predisposi-

tion." (Emphasis added.) *See also United States v. Clemons, supra,* 503 *F.*2d at 489–90 (prior arrest "was for possession of so large a quantity of heroin that delivery could reasonably be inferred"); *cf. United States v. Parrish, supra,* 736 *F.*2d at 156 (previous conviction for conspiracy to manufacture phenylacetone, a precursor of methamphetamine, held "very similar" to current charge of possession with intent to distribute and distribution); *United States v. Badolato,* 710 *F.*2d 1509, 1512 (11th Cir.1982) (video tape regarding harvesting of marijuana crop admissible to prove predisposition to distribute cocaine). Our own decisions reflect the view that possession can be relevant to a predisposition to distribute. *See State v. Talbot,* 135 *N.J.Super.* 500, 511 (App.Div.1975), aff'd, 71 *N.J.* 160 (1976) (evidence of previous guilty plea to charge of illegal possession of narcotics admissible to show predisposition to sell narcotics when entrapment defense raised); *cf. State v. Marzolf,* 79 *N.J.* 167, 178 (1979) (in sentencing for simple possession of marijuana the quantity possessed may suggest possession for other than personal use).

By contrast, cases in which the pending charge has been drug distribution and the prior offenses have not been at all drug-related have rejected the similarity, and hence the relevance, of the prior offenses. In the most widely-discussed case, *DeJong v. United States, supra,* 381 *F.*2d at 726, evidence of prior arrests for burglary and drunkenness was held inadmissible because dissimilar to narcotics dealing. The court was typically vague in announcing its standard, noting only that the evidence of prior offenses must tend "to prove that defendant was engaged in illegal operations *in some way similar* to those charged in the indictment." *Id.* (emphasis added). The court then added: "Proof that a man is a burglar or a drunk does not tend to show that he has dealt in narcotics and was prepared to deal in narcotics at the time of the asserted entrapment." *Id.* In *United States v. Pagan, supra,* 721 *F.*2d at 31, the court held that prior convictions "must involve offenses similar to those in question in order to constitute relevant rebuttal evi-

dence"; the defendant's "prior conviction for dealing in stolen automobiles is so dissimilar from heroin trafficking that it would not have been relevant to demonstrate ... predisposition to distribute drugs." *See also United States v. Daniels, supra,* 572 *F.* 2d 535 (post-indictment arrest for possession of sawed-off shotgun inadmissible to prove predisposition to violate the drug laws).

Thus, if the strongest case for similarity in a drug-distribution context is a prior conviction for distribution of drugs, and if that similarity is attenuated somewhat where the prior conviction was for possession only, perhaps the weakest case for similarity is presented where, as here, the prior convictions are unrelated to the current charge in terms of objects, methods, and particular mental states. They can be regarded as "similar" in only the most abstract terms, as evidenced by the Appellate Division's reasoning that "dishonesty and theft" crimes were "familiar to the drug milieu." Put simply, there is lacking, on the record before us, any factual nexus between the crimes. The prior crimes as presented for the jury's consideration were wholly unrelated to drugs, and were thus closely akin to the crimes—burglary, drunkenness, dealing in stolen automobiles—whose relevance to predisposition to distribute drugs has been repudiated in such cases as *DeJong v. United States, supra,* 381 *F.*2d 725, and *United States v. Pagan, supra,* 721 *F.* 2d 24.[7]

In sum, we are satisfied that the prior crimes, because dissimilar to the current crime, did not have sufficient probative worth bearing upon defendant's predisposition to commit the crimes charged. It was error, therefore, for the trial court to have allowed evidence of these crimes to be used to demonstrate a specific predisposition to commit the current crime.

---

[7]As we noted earlier, this opinion does not preclude any future attempt by the State to show that the prior offenses were, in fact, drug-related. *See* note 6, *supra,* at 82.

## IV.

█ Defendant's claim that evidence of his prior convictions for larceny and burglary was admitted erroneously to prove his predisposition is further complicated by the fact that the trial court admitted the evidence to impeach the defendant's credibility as well as to rebut his entrapment defense. No issue is raised on this appeal as to whether these prior crimes were properly admissible for the purpose of affecting credibility under *State v. Sands, supra,* 76 *N.J.* 127. *Sands* noted explicitly that "[s]erious crimes, including those involving lack of veracity, dishonesty or fraud, should be considered as having a weightier effect than, for example, a conviction of death by reckless driving"; the trial and appellate courts both found controlling the fact that "[t]he prior convictions all involved dishonesty and theft," 202 *N.J.Super.* at 301. However, while the prior convictions were relevant to credibility, the trial court failed to limit the jury's consideration of them to the issue of credibility. Defendant contends that this failure was harmful error calling for a reversal of his conviction.

The State argues that the admission of prior convictions to prove predisposition was, if error, harmless error, because "[t]he evidence of the defendant's predisposition to engage in criminal activity for profit even without the prior convictions, was overwhelming." We disagree. The testimony on disposition to distribute was, if anything, equivocal. The Appellate Division noted, however, that "[t]he prior convictions were known to the jury in any event, even if not pertinent to the defense of entrapment, because defendant had testified and they were properly in evidence for testing his credibility under *Sands* and *N.J.S.A.* 2A:81–2." *State v. Gibbons, supra,* 202 *N.J.Super.* at 301.

The Appellate Division's conclusion seems supported by cases such as *United States v. Parrish, supra,* 736 *F.*2d 152, in which the defendant granted the admissibility of his prior conviction, but argued that the reference to the prior conviction in the

prosecutor's summation was calculated to imply that the prior conviction reflected a criminal predisposition. The court acknowledged that "[o]rdinarily such an argument by a prosecutor is improper," but rejected defendant's position because "[i]n this case ... [defendant] put his predisposition in issue by alleging entrapment.... [T]he evidence was clearly relevant to the question of predisposition, a question that had been put in issue by the defendant. The probative value was not outweighed by the prejudicial potential of the evidence...." *See also Nutter v. United States,* 412 *F.*2d 178 (9th Cir.), *cert.* denied, 397 *U.S.* 927, 90 *S.Ct.* 935, 25 *L.Ed.*2d 107 (1970) (defendant argued that because he had dropped his entrapment defense, his prior convictions should not have been admissible; court held that they were admissible because entrapment was still at issue when they were introduced, and noted that "[b]oth felony priors were admissible to impeach the appellant as to his credibility"); *cf. United States v. Apuzzo, supra,* 555 *F.*2d 306 (the converse of the present case: defendant challenged admissibility of prior convictions for impeachment purposes; court noted that since the prior conviction was similar to the current charge, "[i]t was therefore, in any event, admissible as evidence tending to show a predisposition to commit the crime, such evidence being open to proof when the defense is entrapment"). The implication of these cases, and of the opinion below, is that even if it was error to rule that the prior conviction is admissible to show predisposition (or, in *Apuzzo,* to impeach), that error is harmless because the same prior conviction was available to impeach (or, in *Apuzzo,* to show predisposition).

We disagree with this conclusion. In *Sands* itself this Court noted its awareness "of the danger that a jury might improperly use a prior conviction as evidence of the defendant's criminal propensity." 76 *N.J.* at 142 n. 3. This danger was lessened, the Court held, by its decision in *State v. Sinclair,* 57 *N.J.* 56, 63 (1970), which "instructed trial judges to explain carefully the

limited purpose of prior conviction evidence." *Sands, supra,* 76 *N.J.* at 142 n. 3. In *Sinclair,* the Court affirmed the nexus between prior convictions and credibility, but emphasized that "the trial court ... must carefully explain to the jury the limited purpose for which the evidence can be used." *Sinclair, supra,* 57 *N.J.* at 165–66.

These considerations take on more force in this case, where the defendant's specific predisposition to commit a particular crime is at issue but not his general "criminal propensity." Given the basic instruction of *Sands* that discretion must be exercised with respect to the admissibility of a prior conviction that bears more on disposition than on credibility, given the requirement that a limiting instruction be provided where consideration of prior convictions relative to a defendant's "criminal propensity" would be improper, and given our present determination that the defendant's prior crimes in this case were not similar to the offense currently charged and were thus irrelevant to his predisposition to commit it, the trial court's failure to limit the jury's consideration of the prior convictions to the issue of credibility was clearly harmful error. *See State v. Miscavage,* 62 *N.J.* 294 (1973) ("Once the convictions came into the record, the trial court was duty bound ... to charge on the prior use and effect of prior convictions in the jury's deliberations lest the jury ... think that the criminal conduct ... could serve as ... proof of a criminal propensity...."); *cf. State v. Lair,* 62 *N.J.* 388, 391–92 (1973) (evidence of prior convictions "may not ... be considered or taken into account in determining the defendant's guilt of the offense for which he is being tried.... A limiting instruction to this effect should be given by the trial court"; held: failure to give limiting instruction was not plain error, in light of "overwhelming" evidence of guilt); *State v. Boratto,* 80 *N.J.* 506 (1978) (emphasizing importance of limiting instruction where evidence carries "prejudicial aura").

In this case we go no further than to accept the admissibility of the prior convictions for impeachment purposes and reverse

the judgment because of the trial court's failure to limit the jury's consideration of the prior convictions to the issue of impeachment.

## V.

In light of our decision, a remand and retrial is called for. We point out, in connection with a retrial, that the affirmative entrapment defense must establish both the subjective and objective elements. The former focuses upon causation and predisposition; the latter, also relating to causation, entails proof of police misconduct creating "a substantial risk that the crime would be committed by individuals who were not ready to commit it." *State v. Rockholt, supra,* 96 *N.J.* at 577, 579; *see id.* at 584, 586 (O'Hern, J., concurring); Note, 15 *Seton Hall L. Rev.* 464 (1985). No issue has been raised in this appeal, however, as to the sufficiency of evidence adduced at trial bearing on the objective element of the entrapment defense.

For the foregoing reasons, the judgment below is reversed and the matter remanded for a new trial.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.